Emory J. LYNCH, III, Gregory Lynch, on behalf of themselves and all persons similarly situated, by Emory J. Lynch, Jr., as Next Friend, Plaintiffs,

v.

The KENSTON SCHOOL DISTRICT BOARD OF EDUCATION, Defendant.

Civ. A. No. C 63-722.

United States District Court
N. D. Ohio, E. D.

May 20, 1964.

Lucille Huston, Chagrin Falls, Ohio, Robert L. Baker, Cleveland, Ohio, for plaintiffs.

Gene Henry, Asst. County Pros., Chardon, Ohio, Richard O. Colgrove, Painesville, Ohio, for defendant.

KALBFLEISCH, District Judge.

This suit, based solely upon the Fourteenth Amendment to the United States Constitution, seeks to order court termination of alleged actual and "de facto" racial segregation in the Kenston Elementary Schools. The complaint sets forth two causes of action, the first of which alleges that the defendant school board assigns pupils to a particular school by reference to the child's home address "based on the geographic location of that home address." Plaintiffs complain that, because they reside in a geographic location in which most of the residents are of the Negro race, this policy results in segregation because it requires them to attend a school in which the racial character is "almost exclusively Negro." The second cause of action alleges that plaintiffs and other Negro children, by virtue of the manner in which the school district boundary lines are drawn, are subjected to actual discrimination by their school assignment.

The defendant has moved to dismiss the first cause of action on the basis that it fails to state a claim upon which relief can be granted. Defendant contends that there is no constitutional right to attend an integrated or particular school, and that so long as school assignments are not made upon a racially discriminatory basis no constitutional rights have been infringed. Plaintiffs, in essence, have answered this motion by contending that they have a constitutional right not to attend a school whose racial composition is primarily Negro, but that even if there is not such a right they should be allowed to prove actual discrimination in support of their first cause of action.

Because the second cause of action alleges actual discrimination and proof of

such discrimination may be made thereunder, retention of the first cause of action is not necessary to enable the plaintiffs to introduce evidence of actual discrimination. Furthermore, the Court is of the opinion that the first cause of action does not allege actual discrimination. Therefore, the first cause of action will be dismissed, unless the Court finds that constitutional rights can be infringed by the de facto segregation which results from good faith adherence to a neighborhood school policy.

Any discussion of this issue must, of course, start with Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), in which the Supreme Court in effect overruled Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L. Ed. 256 (1896). In the Brown case, as a reason for its decision, the Court referred to the "inherently unequal" situation which resulted when members of one race were required to attend separate schools whose student body was composed only of members of their own race. The plaintiffs have attempted to utilize this language in support of their contention that de facto segregation resulting from good faith adherence to a neighborhood school policy is unconstitutional. In paragraph 8 of their complaint, they allege:

> "8. Because of defendant's enumeration of pupils to be registered in particular elementary schools of the Kenston School District, based on the home address of the child, the resulting racial separation engenders feelings and attitudes which interfere or tend to interfere with successful learning. In the minds of Negro pupils and parents and in the mind of the community as a whole, a stigma is attached to attending a school the enrollment and faculty of which are completely Negro, and this stigma results in a feeling of inferiority which interferes or tends to interfere with the learning process;"

However, the instructions of the Supreme Court to the District Court, outlining in what manner the latter should implement the Brown decision, more accurately reflect the legal determination made therein than do the sociological reasons given by the Court in support of its original decision. The Supreme Court said the factors which the lower court should consider in implementing the Brown decision were:

> " * * * problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, [and] *revision of school districts and attendance areas into compact units* to achieve a system of determining admission to the public schools on a nonracial basis * *." (Emphasis added.) Brown v. Board of Education, 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955).

Thus, the Court did not order integration. Rather, it ordered an end to segregation and recommended that that end be achieved by consolidation of school districts into compact units, with attendance being determined on a nonracial basis.

At the hearing following remand to the District Court, the plaintiffs in Brown evidently made substantially the same contention that is made hereby objecting that a proposed plan for neighborhood schools would result in some schools' being attended only by Negro children. They argued that this result made the plan unconstitutional. Rejecting this contention, the District Court said that the Supreme Court's opinion "does not mean that there must be intermingling of the races in all school districts. It means only that they may not be prevented from intermingling or going to school together because of race or color." It then went on to say: "If it is a fact, as we understand it is, with respect to Buchanan School that the district is inhabited entirely by colored students, no violation of any constitutional right results because they are compelled to attend the school in the district in which they live." Brown v. Board of Educa-

tion, 139 F.Supp. 468, 470 (D.Kan.1955), quoted with approval in Kelley v. Board of Education, 270 F.2d 209, 229 (6th Cir. 1959).

The United States District Court for the Eastern District of Michigan, in Henry v. Godsell, 165 F.Supp. 87 (1958), was confronted with a complaint in which the plaintiff made much the same arguments as plaintiffs urge here. The Court there said:

"The plaintiff has no constitutionally guaranteed right to attend a public school outside of the attendance area in which she resides." (P. 91 of 165 F.Supp.)

"The fact that in a given area a school is populated almost exclusively by the children of a given race is not of itself evidence of discrimination." (P. 90 of 165 F.Supp.)

It therefore concluded:

"The plaintiff has failed to present a case for any relief by this Court and an order dismissing the complaint may be submitted for signature." (P. 92 of 165 F.Supp.)

Likewise, the District Court in Tennessee, in ordering the desegregation of previously segregated schools, has been faced with a similar problem. In Monroe v. Board of Commissioners, 221 F. Supp. 968 (1963), the Court specifically rejected the contention, which is strongly urged by plaintiffs herein, that the "right to attend schools based on residence zones is in substance a right to attend based on race." (221 F.Supp. 973.) The Court held that the Constitution does not require affirmative integration of the races, and said:

"If Negro residences tend to be concentrated in certain areas because of illegal pressure or compulsion, certainly the remedy for this is not to upset the system of neighborhood public schools." (P. 974 of 221 F. Supp.)

See also Vick v. County Board of Education, 205 F.Supp. 436 (W.D.Tenn.1962). In Evans v. Buchanan, 207 F.Supp. 820 (D.Del.1962), the Court said, with reference to the Brown decision:

"The clear implication of this statement is that if races are separated because of geographic or transportation considerations or other similar criteria, it is no concern of the Federal Constitution. Thus, discrimination is forbidden but integration is not compelled."

Furthermore, the same contentions made by plaintiffs herein in their first cause of action were urged before both the district and appellate courts, and were there rejected, in Bell v. School City of Gary, Ind., D.C., 213 F.Supp. 819 (1963), 324 F.2d 209 (7th Cir. 1963), cert. den. 84 S.Ct. 1223 (1964). The District Court said, at 213 F.Supp. 829:

"The neighborhood school which serves the students within a prescribed district is a long and well established institution in American public school education. It is almost universally used, particularly in the larger school systems. It has many social, cultural and administrative advantages which are apparent without enumeration. With the use of the neighborhood school districts in any school system with a large and expanding percentage of Negro population, it is almost inevitable that a racial imbalance will result in certain schools. Nevertheless, I have seen nothing in the many cases dealing with the segregation problem which leads me to believe that the law requires that a school system developed on the neighborhood school plan, honestly and conscientiously constructed with no intention or purpose to segregate the races, must be destroyed or abandoned because the resulting effect is to have a racial imbalance in certain schools where the district is populated almost entirely by Negroes or whites. On the other hand, there are many expressions to the contrary, and these expressions lead me to believe that racial balance in our public schools is not constitutionally mandated."

See, to the same effect, Webb v. Board of Education, 223 F.Supp. 466 (N.D.Ill. 1963).

Plaintiffs here contend that they have a constitutional right to attend a school in which the student body is not composed entirely of members of their own race. They do not allege—aside from sociological implications—that there is any difference in the quality of the educational opportunities offered in the various schools. Their objection to the school to which they are assigned is that the student body thereof is composed of Negroes; and their reason for claiming a right to be assigned to a different school is that such assignment would enable them, as Negroes, to attend a school whose student body was composed of a sufficient number of members of the Caucasian race as to lift the alleged esthetic social stigma. The Sixth Circuit, in Goss v. Board of Education, 373 U.S. 683, 687, 83 S.Ct. 1405, 1408, 10 L. Ed.2d 632 (1963), made a comment which is apropos to this argument: "Classifications based on race for purposes of transfers between public schools, as here, violate the Equal Protection Clause of the Fourteenth Amendment." The Court went on to say that such racial classifications are "obviously irrelevant and invidious."

Senior Justice Harlan, in his dissent in Plessy v. Ferguson, 163 U.S. 537, 16 S. Ct. 1138 (1896), wrote:

"In respect of civil rights * * * the constitution of the United States does not, I think, permit any public authority to know the race of those entitled to be protected in the enjoyment of such rights. * * * I deny that any * * * judicial tribunal may have regard to the race of citizens when the civil rights of those citizens are involved." (P. 554 of 163 U.S., p. 1145 of 16 S.Ct.)

"Our constitution is color-blind * * *. In respect of civil rights, all citizens are equal before the law. * * * The law regards man as man, and takes no account of his sur-roundings or of his color when his civil rights as guaranteed by the supreme law of the land are involved." (P. 559 of 163 U.S., p. 1146 of 16 S.Ct.

And the Fifth Circuit Court of Appeals, in recently ruling that a grand jury upon which Negroes had been purposely included was as unconstitutional as one from which they had been purposely excluded, said:

"A Negro is entitled to the equal protection of the laws, no less and no more. He stands equal before the law, and is viewed by the law as a person, not as a Negro." Collins v. Walker, 5 Cir., 329 F.2d 100, 105 (1964).

In this cause of action the plaintiffs are requesting the Court to do what the Constitution forbids, that is, to recognize their color and to order them admitted to a school because of that color. Plaintiffs have a constitutional right not to be objects of racial discrimination, and they can vindicate that right in an action before this Court, but they do not have a constitutional right to attend or to refrain from attending a particular school on the basis of racial considerations when there has been no actual discrimination against them. The law is color-blind and, in cases such as this, that principle, which was designed to insure equal protection to all citizens, is both a shield and a sword. While protecting them in their right to be free from racial discrimination, it at the same time denies them the right to consideration on a racial basis when there has been no discrimination. To the extent that Blocker v. Board of Education, 226 F.Supp. 208 (E.D.N.Y. 1964), and Branche v. Board of Education, 204 F.Supp. 150 (E.D.N.Y.1962), are in conflict with this decision, the Court believes they were erroneously decided and it respectfully declines to follow their precedents.

Defendant's motion to dismiss the first cause of action will be granted.

■ The defendant has moved to dismiss the second cause of action because of an alleged failure on the part of the plaintiffs to exhaust their state administrative remedies. The defendant contends that the plaintiffs were obliged to advise the county school board of their claim of segregation and to demand that it take action pursuant to Section 3313.-85 of the Ohio Revised Code. That section provides:

"If the board of any local school district fails to perform the duties imposed upon it or fails to fill a vacancy in such board within a period of thirty days after such vacancy occurs, the county board of education in which such district is located, upon being advised and satisfied of such failure, shall act as such board and perform all duties imposed upon such board."

The section also provides that in case the county board shall fail to act the probate court shall be directed to act in its stead. There is considerable doubt that either a board of education or a probate court would be required, under Section 3313.85, Ohio Revised Code, to terminate actual segregation within school districts, if such segregation should exist. The placement of this section within the Code and the terminology thereof indicate that the section is concerned primarily with such mandatory duties of the board as the provision of free education for at least the minimum required period each year (Section 3313.-48, Ohio Revised Code), and the redistricting of sub-districts when appropriate (Section 3313.03, Ohio Revised Code). It is highly doubtful that within the term "the duties imposed upon it" is included the duty to grant the relief plaintiffs seek here. Under these circumstances the Court is of the opinion that the plaintiffs were not required to proceed with such tenuous administrative remedies before resorting to this Court for the enforcement of their rights. Only last year, in McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), the Supreme Court said:

"Where strands of local law are woven into the case that is before the federal court, we have directed a District Court to refrain temporarily from exercising its jurisdiction until a suit could be brought in the state court. * * *

"We have, however, in the present case no underlying issue of state law controlling this litigation. The right alleged is as plainly federal in origin and nature as those vindicated in Brown v. Board of Education, 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873]. Nor is the federal right in any way entangled in a skein of state law that must be untangled before the federal case can proceed. For petitioners assert that respondents have been and are depriving them of rights protected by the Fourteenth Amendment. It is immaterial whether respondents' conduct is legal or illegal as a matter of state law. * * * Such claims are entitled to be adjudicated in the federal courts."

Although the facts in that case were somewhat different from those involved herein, the Court believes that the language above quoted is dispositive of this issue.

The motion to dismiss the second cause of action will be denied.

■ The defendant has moved to require the plaintiff to furnish a more definite statement of the complaint. This motion is based upon the fact that apparently the plaintiffs have attempted to set forth a class action but, according to the defendant, they have not properly pleaded such an action. Volume 3 of Moore's Federal Practice, page 3423, says that a complaint in a class action "should allege * * * the existence of a class, that the members are so numerous as to make it impracticable to bring them all before the court, [and] that claimant adequately represents the class * * *." It also would appear that in a situation such as this the complaint should allege

that the rights sought to be enforced are several, that there is a common question of law or fact affecting the several rights, and that a common relief is sought. Rule 23, Federal Rules of Civil Procedure. Defendant contends that its reason for making this motion is that it is unable at this time to determine the exact members of the class which the plaintiffs purport to represent. Certainly the inclusion of such allegations with the requisite specificity would not be difficult, and might be useful in later determinations which will have to be made in this lawsuit. Therefore, the plaintiffs will be allowed twenty days in which to file an amended complaint, in which the allegations of their second cause of action are supported by the proper averments concerning a class suit. Should they fail to so amend, the second cause of action will be continued as an individual action.

It will be so ordered.