THE STATE, EX REL. HARRELL, APPELLEE, *v.* BOARD OF EDUCATION OF THE
STREETSBORO CITY SCHOOL DISTRICT, APPELLANT;
STATE BOARD OF EDUCATION, APPELLEE.
THE STATE, EX REL. CELIGOJ, APPELLEE, *v.* BOARD OF EDUCATION OF THE
STREETSBORO CITY SCHOOL DISTRICT, APPELLANT;
STATE BOARD OF EDUCATION, APPELLEE.

[Cite as State, ex rel. Harrell, *v.* Streetsboro City School Dist. Bd. of Edn. (1989),
46 Ohio St. 3d 55.]

(Nos. 88-1501 and 88-1502—Submitted July 26, 1989—Decided October 11, 1989.)

*Benito C. R. Antognoli,* for appellees Harrell and Celigoj.

*Gary L. Pierce* and *Ronald J. Habowski,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Lauren M. Ross,* for appellee State Board of Education.

*Per Curiam.* For a writ of mandamus to issue, a court must find that the relator has a clear legal right to the relief prayed for, that the respondent is under a corresponding clear legal duty to perform the requested act, and that relator has no plain and adequate

remedy at law. *Freshour* v. *Radcliff* (1988), 35 Ohio St. 3d 181, 519 N.E. 2d 395; *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus. For the following reasons, we find that appellees Harrell and Celigoj have each sustained their burdens of proof on these issues. We therefore affirm the court of appeals' decisions granting them writs of mandamus.

I

The first question before us is whether Streetsboro was required to file appellees' initial petitions proposing territory transfers with the state. In *State, ex rel. Fairview Park Bd. of Edn.,* v. *Rocky River Bd. of Edn.* (1988), 40 Ohio St. 3d 136, 140, 532 N.E. 2d 715, 719, we determined that a resident board of education had no duty to file an R.C. 3311.24 petition that did not contain the required percentage of valid signatures. It follows that when such a petition does contain this percentage of signatures and those signatures have not been invalidated, a legal duty to file the petition exists.

R.C. 3311.24 provides, in part:

"If the board of education of a city school district * * * deems it advisable to transfer territory from such district to an adjoining city * * * school district * * *, or if a petition, signed by seventy-five per cent of the qualified electors residing within that portion of a city * * * proposed to be transferred voting at the last general election, requests such a transfer, the board of education of the district in which the proposal originates shall file such proposal, together with a map showing the boundaries of the territory proposed to be transferred, with the state board of education prior to the first day of April in any even-numbered year."

Ohio Adm. Code 3301-89-02(A)(3) provides the procedure for a territory transfer pursuant to R.C. 3311.24. It states, in part:

"A person(s) interested in requesting a transfer of territory from one school district to another, for school purposes, pursuant to section 3311.24 of the Revised Code, may petition to do so through the resident board of education.

"(a) The board of education of the district in which such proposal originates, regardless of its position on the proposed transfer, shall file the proposal, together with a map showing the boundaries of the territories proposed to be transferred, with the state board of education prior to the first day of April in any even-numbered year.

"(b) The board of education of the district in which the proposal originates by petition of qualified electors residing within the portion of the school district proposed to be transferred shall determine the sufficiency of the signatures on the petition and shall notify the state of its determination."

Streetsboro argues that these provisions only require it to file petitions containing the requisite number of valid signatures with the state, and that if the petitions are determined insufficient, it need only notify the state of its determination. Since Harrell and Celigoj assert that their petitions had the necessary number of valid signatures, accepting this argument would not defeat their claims for a writ of mandamus. Nevertheless, they suggest that the regulation contemplates an obligation to send such petitions regardless of the sufficiency determination's result, and perhaps, even before the determination is made.

Streetsboro's argument is supported by the statute. R.C. 3311.24 requires only "such" proposals, *i.e.,*

those meeting the characteristics set forth in the earlier clause, to be filed with the state. In light of this, the "regardless of its position" language in Ohio Adm. Code 3301-89-02(A)(3)(a) seemingly does refer, as Streetsboro submits, to Ohio Adm. Code 3301-89-02(B) through (D), which require boards of education affected by a proposed territory transfer to provide the state with answers to some questionnaires about the transfer's effect in the area. On the other hand, appellees point out that the regulation requires the resident board to notify the state of its determination on the sufficiency of any petition. Thus, it makes sense that the board should show the state why the determination was necessary.

However, we agree with Streetsboro's view because it is consistent with our result in *Fairview Park, supra.* There, the resident board provided the State Board of Education with only some signature withdrawal letters and a resolution rejecting a territory transfer petition. We denied a writ of mandamus and reversed the court of appeals' holding that it was incumbent on the resident board to forward all facially sufficient transfer petitions to the state to determine the signatures' validity. Thus, we implicitly rejected the premise that all such petitions, irrespective of signature validity, must be filed pursuant to R.C. 3311.24.

The court of appeals concluded that Streetsboro had a duty to file the transfer petitions it received prior to April 1, 1988, regardless of whether it had checked the sufficiency of the signatures. Based on the foregoing, however, we find that a board need only send petitions that have been determined to be sufficient. Accordingly, the court of appeals' finding was error.

As mentioned, this finding is not fatal to appellees' claims for relief.

Thus, Streetsboro next argues that a writ of mandamus could not issue unless the court of appeals found that it was an abuse of discretion to reject the Harrell and Celigoj petitions as invalid. Streetsboro further contends that it did not abuse its discretion, and that the appellate court erred by substituting its judgment on the question of the petitions' sufficiency.

Streetsboro's position, as it relates to Harrell, is founded on the argument that the number of qualified electors residing in the area to be transferred forms the base figure from which the seventy-five percent signature requirement in R.C. 3311.24 is to be determined. More specifically, it seems to claim that the "voting at the last general election" language of the statute refers just to the signers of the petition, not to the population from which the percentage is to be taken. Thus, if the operative date for determining the petition's sufficiency is found to be the date of the prior general election, Streetsboro maintains that Harrell's petition should have contained forty-six valid signatures; that is, seventy-five percent of the sixty-one qualified electors then residing in the transfer territory, rounded to the next whole number. If the operative date for determining the petition's sufficiency is determined to be the date it was submitted, Streetsboro maintains that it should have contained forty-three signatures; that is, seventy-five percent of the fifty-seven qualified electors then residing in the transfer territory, rounded to the next whole number. Apparently because either argument involves a higher number of signatures than Harrell's petition contained, Streetsboro does not assert a preference between these dates.

Streetsboro relies on 1964 Ohio Atty. Gen. Ops. No. 1043, at 2-190, and *Iddings* v. *Bd. of Edn. of Jefferson Cty.*

*School Dist.* (1951), 155 Ohio St. 287, 44 O.O. 294, 98 N.E. 2d 827. This authority supports the conclusion that the signers of a territory transfer petition must have actually voted in the prior general election. But as Harrell argues, it does not support the broader premise that all the transfer territory's qualified electors, as opposed to its voters, are to be considered in arriving at the statutorily required percentage of signatures. Streetsboro also makes much of the distinction between an "elector," defined in R.C. 3501.01(N), and a "voter," defined in R.C. 3501.01 (O). However, in *Fairview Park, supra,* at 137, 532 N.E. 2d at 716, we construed R.C. 3311.24's use of "qualified electors residing within that portion of a city or exempted village school district proposed to be transferred voting at the last general election" as synonymous with "voters" in this passage:

"The parties have stipulated that one hundred eleven *voters* residing in the subject territory voted in the 1985 general election. R.C. 3311.24 states that seventy-five percent *of that number,* or eighty-four *electors,* would be required to sign the petition requesting transfer of the disputed Ward 2 territory." (Emphasis added.)

This reference to the requirements of R.C. 3311.24 enables us to conclude, consistent with Harrell's argument, that resident boards of education are to consider a subgroup of all the qualified electors residing in a subject territory in order to determine how many signatures are needed on a transfer petition. That subgroup consists of the pertinent voter population. As a result, we reject Streetsboro's argument that the number of necessary signatures depends on the number of qualified electors.

Here, the parties have stipulated that fifty voters resided in the transfer territory as of the previous general election, and that forty-eight voters lived there when Harrell's petition was first filed. Since the court of appeals determined the petition's sufficiency as of the date of its submission and Streetsboro does not oppose its rationale for doing so, we find forty-eight to be the appropriate amount from which to determine the statutory percentage in this case. It is undisputed that Harrell's initial petition contained this percentage in that thirty-six of the petition's signatures had not been invalidated. Therefore, her petition was sufficient under R.C. 3311.24.

Having reached this conclusion, it is unnecessary to address the parties' remaining arguments in connection with whether Streetsboro properly or improperly invalidated four of the forty signatures on the amendment to Harrell's petition. As Harrell submits, her initial petition was "perfectly valid" notwithstanding the invalidated signatures. Furthermore, we need not decide whether Streetsboro abused its discretion, or whether the court of appeals substituted its judgment for Streetsboro's in case No. 88-1501. Since the Harrell petition was sufficient and R.C. 3311.24 provides that a board of education of a district in which a sufficient proposal originates *shall* file it with the State Board of Education, Streetsboro clearly had a duty to file the Harrell petition.

With respect to Celigoj, however, the parties agree that the duty in R.C. 3311.24 would not be triggered unless both the signatures on her petition were valid and Streetsboro abused its discretion by invalidating them. Streetsboro argues that Carmen Celigoj's signature on the first petition was properly invalidated because, like the initiating petitions for placing proposed territory transfers on the ballot in R.C. 3311.22 (transfer between local

school districts within the county) and R.C. 3311.231 (transfer of local school district to an adjoining county, city or exempted village school district), an R.C. 3311.24 petition must include a circulator's affidavit completed by someone other than a signer. Streetsboro cites 1968 Ohio Atty. Gen. Ops. No. 68-074, which applies the circulator affidavit requirement of R.C. 3501.38(E) to an R.C. 3311.231 petition. Celigoj responds that R.C. 3501.38(E) does not apply here because that statute relates only to petitions for becoming a candidate or for holding an election, and that an R.C. 3311.24 petition involves neither.

The court of appeals accepted Celigoj's argument and held that her petition was valid when originally delivered to Streetsboro because a circulator's affidavit was surplusage that did not affect the validity of Carmen Celigoj's signature. We agree. While the circulator's affidavit required by R.C. 3501.38(E) would provide some assurance of signature validity, R.C. 3501.38 extends only to petitions that may lead to elections. An R.C. 3311.24 petition does not; the territory transfer is accomplished by a resident board of education's resolution. Moreover, R.C. 3311.24 and Ohio Adm. Code 3301-89-02 do not provide for a circulator's affidavit. This requirement cannot be read into these provisions just because it applies. to other petitions provided for by the same Revised Code or Administrative Code chapter.

Accordingly, we hold that Streetsboro abused its discretion by finding Carmen Celigoj's initial petition invalid and that it had an obligation to file the petition with the state. However, even if we were convinced that Streetsboro did not abuse its discretion with respect to Celigoj's first petition, we could still find that it abused its discretion with respect to her amended petition.

Streetsboro offers no explanation other than the timing of the amended petition for not filing it. We note that Celigoj delivered her initial petition on February 29, 1988, but that Streetsboro did not deem it insufficient until March 30, 1988. Celigoj returned her amended petition the next day.

In a case where the amended petition contains numerous signatures or involves a complicated correction, the time needed to determine the petition's sufficiency might justify a local board's refusal to immediately forward it. Here, however, the correction involved only two names and, as we have said, was not even needed. In *Fairview Park, supra,* the board of education met to consider a transfer petition, rejected it, and delivered the rejecting resolution to the state — all on March 31, 1986. We do not discern from the record any compelling reason why Streetsboro could not have done the same. Accordingly, if we were to reach this issue, we would affirm the court of appeals' finding that Streetsboro also had a duty to forward Celigoj's amended petition.

## II

Having found that Harrell and Celigoj are entitled to Streetsboro's performance of its duty to file their transfer petitions, we must next decide whether they have no other plain and adequate remedy in the ordinary course of law. R.C. 2731.05. Streetsboro maintains that such remedies are available under R.C. 3313.85 (probate court to act when local board of education fails to perform its duties), 2506.01 (appeal from decisions of any political subdivision), and 2721.02 (declaratory judgments).

In response, Harrell and Celigoj argue that R.C. 3313.85 applies when a

local board of education has failed to carry out its day-to-day ministerial duties, but not to quasi-judicial duties such as the ones at issue here. They cite cases like *Rutherford* v. *Bd. of Edn. of Port Homer Rural School Dist.* (1933), 127 Ohio St. 81, 186 N.E. 731, which, although decided under a forerunner to R.C. 3313.85, G.C. 7610, suggest this position. Indeed, in *Rutherford,* this analogous statute's objective was said to be "the maintenance of an efficient system of educational facilities throughout the entire state of Ohio." *Id.* at 83, 186 N.E. at 732.

Moreover, in *Lynch* v. *Kenston Dist. Bd. of Edn.* (N.D. Ohio 1964), 229 F. Supp. 740, 745, 28 O.O. 2d 432, 436, the court's opinion implied that R.C. 3313.85 permitted a probate court to carry out duties imposed by R.C. Chapter 3313 on a board, but that it would not provide a remedy when the duty came from another source, which, in that case, was the Equal Protection Clause of the United States Constitution. Similarly, Streetsboro's duty is imposed by R.C. 3311.24, not by R.C. Chapter 3313. This and the preceding discussion support the conclusion that R.C. 3313.85 would not be an adequate alternative remedy. Thus, we reject Streetsboro's argument in this regard.

As for the availability of an appeal under R.C. Chapter 2506, Harrell and Celigoj essentially claim that this remedy was unavailable because they were not provided due process at the meeting where their petitions were declared insufficient. They argue that Streetsboro denied them adequate notice of what was to occur at the March 30, 1988 meeting, the ability to present evidence, and a record of what did happen during the meeting to the extent that an appeal would be meaningless. According to them, the March 30 proceeding was therefore not a quasi-judicial one from which an R.C. Chapter 2506 appeal would lie.

We need not decide today whether appellees could have appealed pursuant to R.C. Chapter 2506, however. It is well-established that a remedy will not prevent a writ of mandamus unless it is both available and adequate. To be adequate, the remedy must be complete in its nature, beneficial and speedy. *State, ex rel. Liberty Mills, Inc.,* v. *Locker* (1986), 22 Ohio St. 3d 102, 104, 22 OBR 136, 137, 488 N.E. 2d 883, 886. Here, the Harrell and Celigoj petitions were to be filed with the state prior to April 1, 1988. Thus, even if available, an R.C. Chapter 2506 appeal would not have been a speedy enough remedy to accomplish this filing. Accordingly, we find this remedy inadequate even if it were available in this situation.

By the same token, we do not consider declaratory relief an adequate remedy under these circumstances. A declaratory judgment action will not bar a writ of mandamus if a clear legal right to relief has been shown. *State, ex rel. Fenske,* v. *McGovern* (1984), 11 Ohio St. 3d 129, 11 OBR 426, 464 N.E. 2d 525, paragraph two of the syllabus. As Harrell and Celigoj have made this showing, the court of appeals was able to exercise its discretion to issue the writs notwithstanding the remedy of declaratory judgment.

### III

Streetsboro makes three other arguments in support of these appeals. In the first, it urges a violation of equal protection because (1) R.C. 3311.24 requires a different number and category of signers on a petition to initiate a territory transfer than is required for territory to be transferred under R.C. 3311.22 and 3311.231; and (2) R.C. 3311.24 requires a resident board of education to check the petition's suffi-

ciency and State Board of Education approval, whereas R.C. 3311.22 and 3311.231 require the board of elections to check the petition's sufficiency and placement of the proposal on the ballot. However, as Harrell, Celigoj, and the State Board of Education argue, Streetsboro is not one of the qualified electors that it claims are the victims of these purportedly irrational classifications. Since Streetsboro is not a member of the class it identifies, it lacks standing to attack the statute's constitutionality on the ground that it violates others' rights to equal protection. *Bernardini* v. *Bd. of Edn.* (1979), 58 Ohio St. 2d 1, 12 O.O. 3d 1, 387 N.E. 2d 1222. See, also, *Witham* v. *South Side Bldg. & Loan Assn.* (1938), 133 Ohio St. 560, 562, 11 O.O. 269, 270, 15 N.E. 2d 149, 150. Accordingly, this argument is also rejected.

In the second argument, Streetsboro asserts that R.C. 3311.24 manifests an unconstitutional delegation of legislative authority because it does not provide standards for determining the sufficiency of a transfer petition. Streetsboro cites no specific authority for this premise, but seems to be arguing that unless an R.C. 3311.24 petition is subject to the same procedures as R.C. 3311.22 and 3311.231 petitions (*i.e.*, verification by the board of elections and placement of the proposal on the ballot) the statute gives too little guidance to be constitutional.

As Harrell, Celigoj, and the state observe, however, Section 26, Article II of the Ohio Constitution expressly sanctions the delegation of legislative authority in connection with the public school system. Thus, in *Bd. of Edn. of Grandview Hts. City School Dist.* v. *State Bd. of Edn.* (1976), 45 Ohio St. 2d 117, 74 O.O. 2d 215, 341 N.E. 2d 589, we held a related territory transfer statute, R.C. 3311.06 (annexation procedures), constitutional even though it provided no standards or guidelines for the State Board of Education to use in approving or disapproving the transfer. Since Article 26 is not violated by a statute authorizing the transfer of territory when the transfer itself proceeds without the General Assembly's specific direction, we find that it is also not violated by a statute that does not set forth specific guidelines for the sufficiency of the petition that initiates a territory transfer. Accordingly, Streetsboro's position on this issue is not well-taken either.

Streetsboro's third and final argument is that R.C. 3311.24's deadlines for filing and approving petitions are mandatory such that the state could not be ordered or agree to treat the Harrell and Celigoj petitions as if they had been timely filed. Harrell, Celigoj, and the state respond that these deadlines are directory. They rely on paragraph three of the syllabus of *State, ex rel. Jones,* v. *Farrar* (1946), 146 Ohio St. 467, 32 O.O. 542, 66 N.E. 2d 531, which states:

"As a general rule, a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure; and, unless the object or purpose of a statutory provision requiring some act to be performed within a specified period is discernible from the language employed, the statute is directory, not mandatory."

R.C. 3311.24's language does not establish that its time periods are for anything other than convenience and orderly procedure. Indeed, its deadlines resemble the one at issue in *State, ex rel. Webb,* v. *Bryan City School Dist. Bd. of Edn.* (1984), 10 Ohio St. 3d 27, 10 OBR 178, 460 N.E. 2d 1121. In *Webb,* we held that the phrase "the

board shall set a time for the hearing which shall be within thirty days from the date of receipt of the written demand" in R.C. 3319.16 was directory. We also distinguished *Dorrian* v. *Scioto Conserv. Dist.* (1971), 27 Ohio St. 2d 102, 56 O.O. 2d 58, 271 N.E. 2d 834, a case on which Streetsboro relies, in this way:

"* * * *Dorrian* * * * is not definitive of the issue here with respect to the interpretation of the word 'shall' in the pertinent language of R.C. 3319.16 under consideration. *Dorrian* essentially dealt with the question whether there was a mandatory duty to act, and not when the act was to be done. Also, *Dorrian* was more concerned with the legislative construction to be given the word 'may' than with the word 'shall.' * * * *Farrar* is more pertinent here than *Dorrian*." *Id.* at 31, 10 OBR at 182, 460 N.E. 2d at 1124-1125.

Based on the foregoing, we agree that the R.C. 3311.24 deadlines are directory, not mandatory. Thus, nothing prevented the State Board of Education from accepting the Harrell and Celigoj petitions after the April 1 deadline. Indeed, any other conclusion would permit Streetsboro to avoid carrying out the clear duty that the court of appeals correctly found to exist.

Having determined that Streetsboro had a duty to file the petitions provided by Harrell and Celigoj on February 29, 1988, that appellees have no other adequate remedy, and that none of Streetsboro's other arguments has merit, we find that the court of appeals properly granted writs of mandamus as to the initial petitions. Accordingly, we affirm the judgments of the court of appeals.

*Judgments affirmed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in judgment only.