WIGHTMAN, Appellant,

v.

OHIO REAL ESTATE COMMISSION, Appellee.

[Cite as *Wightman v. Ohio Real Estate Comm.*, 195 Ohio App.3d 561, 2011-Ohio-1816.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–699.

Decided April 14, 2011.

Kevin E. Humphreys, for appellant.

Michael DeWine, Attorney General, and Cheryl R. Hawkinson, Assistant Attorney General, for appellee.

KLATT, Judge.

{¶ 1} Appellant, Kenneth A. Wightman, appeals from a judgment of the Franklin County Court of Common Pleas that affirmed the order of appellee, the

Ohio Real Estate Commission ("commission"), disciplining Wightman for violating R.C. 4735.18(A)(9) as it incorporates R.C. 4735.59. For the following reasons, we reverse.

{¶ 2} Wightman is a licensed real estate salesperson who focuses his real estate practice on the Short North/Victorian Village area of Columbus. Wightman is affiliated with Prudential American Realty Center ("Prudential"), a licensed real estate broker.

{¶ 3} Lynn and Sandra Meyers owned a duplex located at 1173–1175 Oregon Avenue in the Short North/Victorian Village area. When the duplex was built, each of the two units had two upstairs bedrooms. However, at some point before the Meyerses purchased the duplex, a previous owner had demolished a portion of the upstairs common wall to attach one of the bedrooms of the 1173 unit to the 1175 unit. The Meyerses' daughter, an Ohio State University student, and two friends lived in the larger 1175 unit. The Meyers rented the smaller 1173 unit.

{¶ 4} In the spring of 2006, the Meyerses decided to sell the duplex. Sandra contacted Wightman and asked him to evaluate the duplex. On April 3, 2006, Wightman visited the duplex and toured it with Sandra. Wightman told Sandra that she could sell the duplex "right away" to a purchaser looking for a rental property investment if she listed the duplex at $200,000. Wightman estimated that a buyer who wanted to occupy the duplex would pay between $225,000 and $250,000, but Wightman warned Sandra that such buyers were scarcer than investors, so she could not expect a fast sale at the higher price.

{¶ 5} Wightman and Sandra also discussed converting the duplex into a condominium and selling the units separately. Wightman explained that the upstairs structural alteration would make it difficult to find a buyer for the smaller, less desirable 1173 unit. According to Wightman, he also told Sandra that converting the duplex to a condominium could take two to four months. Wightman testified that Sandra rejected the condominium option because she wanted a quick sale.

{¶ 6} Prior to meeting with Wightman, Sandra had informed the tenants of the 1173 unit that she and her husband intended to sell the duplex. One of the tenants, Brian Ray, expressed interest in buying it. On the morning of April 4, 2006, Sandra offered to sell Ray the duplex for $220,000. That evening, Wightman met with Sandra to review the paperwork necessary to list the duplex for sale. Sandra informed Wightman about her offer to Ray. Based on the amount of the offer, Wightman suggested listing the duplex for $239,900.

{¶ 7} Wightman then presented Sandra with a form contract entitled "Exclusive Right to Sell Listing Contract." The listing contract granted Prudential the exclusive right to sell the duplex from April 5 to October 5, 2006. It also

provided that the Meyerses would pay Prudential a commission of seven percent of the selling price of the duplex. At Sandra's insistence, Wightman added a term to the listing contract that precluded Prudential from receiving a full commission if Ray purchased the duplex by April 6, 2006. On April 5, 2006, the Meyerses signed the listing contract. Wightman executed the listing contract on Prudential's behalf.

{¶ 8} On April 7, 2006, Ray declined Sandra's offer to purchase the duplex. About this same time, Wightman suggested to Sandra that he could purchase the duplex, convert it to a condominium, and offer Ray the opportunity to purchase the 1173 unit. Sandra indicated that she and her husband would consider a purchase offer from Wightman.

{¶ 9} Wightman presented an unsigned, written offer to the Meyerses on April 21, 2006. The offer listed the purchase price at $234,500, an amount that would net the Meyerses $220,000 after payment of the commission due to Prudential. In the additional terms and conditions section, the offer stated:

Although the Sellers have listed the property for sale with Real Estate agent Kenneth Wightman, and although Wightman is ready, willing and able to place it on the open market for sale, the Sellers have concluded that it is in their best interest to sell it to Wightman instead, even though they might have been able to sell it for more on the open market.

The sale price of this transaction represents the same net price the Seller offered to sell this property to another prospective buyer, plus the real estate commission, therefore the Sellers will net the same amount as if the other buyer had purchased this property.

Furthermore, the Sellers understand that because Wightman is the buyer, he cannot represent their interests in this transaction and that they are therefore representing themselves.

* * *

Sellers understand that Wightman is a licensed real estate broker doing business in Ohio, whose intent in purchasing this property is to turn it into condos and sell them for a profit. Sellers acknowledge that Wightman will be reselling these units at a later date for a profit.

{¶ 10} During the April 21, 2006 meeting, Wightman and the Meyerses discussed the various terms of the offer. In response to the Meyerses' concerns, Wightman made handwritten edits to the offer, which he and the Meyerses initialed. Wightman then signed the offer and gave it to the Meyerses so they could review it with their attorney.

{¶ 11} The Meyerses' attorney recommended that they have a second real estate salesperson evaluate the duplex. According to the second real estate

salesperson, the fair market value of the duplex was $256,000 to $258,000. Because this estimate of the duplex's value exceeded Wightman's estimate, the Meyerses decided to submit a counteroffer to Wightman that raised the purchase price to $239,900. Significantly, the counteroffer also provided that "[t]he parties agree that no party is obligated to pay any commissions and any listing agreement between Seller and Buyer is hereby terminated and shall be void *ab initio*." Thus, under the terms of the counteroffer, the Meyerses would net $239,900, not $220,000. Wightman rejected the counteroffer.

{¶ 12} After the parties failed to reach an agreement, Wightman tried to communicate with the Meyerses regarding marketing the duplex. In return, the Meyerses requested that Prudential terminate the listing contract. Prudential refused.

{¶ 13} Ultimately, the Meyerses waited until the listing contract expired and then converted the duplex into a condominium and sold the two units separately. The larger 1175 unit sold for $194,900, and the smaller 1173 unit sold for $157,900.

{¶ 14} On July 13, 2006, Sandra filed a complaint against Wightman with the Ohio Department of Commerce, Division of Real Estate and Professional Licensing ("Division"). The Division assigned an investigator to the case and, on November 13, 2006, the investigator submitted a written report of the results of his investigation to the superintendent of the Division. In a letter dated November 30, 2006, the superintendent notified Wightman that the Division had scheduled a formal hearing regarding Sandra's complaint for January 12, 2007. The notice stated that the investigation into Sandra's complaint revealed reasonable and substantial evidence that Wightman "[f]ailed to obtain [his] client's written consent to change the party [he] represented with respect to 1173–1175 Oregon Ave., Columbus, Ohio, in violation of R.C. 4735.18(A)(9) as that section incorporates [R.C.] 4735.59." The notice also warned Wightman that if the violation was proved at the formal hearing, he could face disciplinary action.

{¶ 15} Instead of mailing the notice to Wightman's business address, the Division mailed the notice to Wightman at his broker's address. Wightman did not receive the notice, and consequently, he did not attend the January 12, 2007 hearing. Despite Wightman's absence, the hearing examiner proceeded to hear testimony and accept other evidence from the state. Based upon that evidence, the hearing examiner concluded that after the Meyerses signed an agency disclosure form, Wightman "unilaterally chang[ed] the party he represented to be that of himself and submitt[ed] his purchase offer to the sellers, without their written consent to the change in representation." As a result of this conclusion, the hearing examiner recommended that the commission find that Wightman violated R.C. 4735.59, which reads:

To change the party a licensee represents in a real estate transaction after an agency disclosure statement has been signed and dated or following verbal disclosure of the agency relationship, the licensee shall obtain written consent from the party originally represented to represent another party in the transaction.

{¶ 16} After Wightman received a copy of the hearing examiner's report and recommendation, he filed objections, explaining that he had never obtained notice of the hearing. Disturbed that the lack of notice precluded Wightman from defending himself at the hearing, the commission ordered another full hearing so Wightman could present evidence and argument. Wightman appealed this order to the trial court, contending that R.C. 119.07 required the commission to disapprove the hearing examiner's recommendation, not return the matter to the hearing examiner for a second hearing. In a motion to dismiss Wightman's appeal, the state argued that the trial court could not hear the appeal until the commission adjudicated the matter. Because the commission's order did not determine Wightman's rights, duties, privileges, benefits, or legal relationships, the state asserted that it did not constitute an adjudication order that Wightman could appeal under R.C. 119.12. The trial court agreed with the state and dismissed Wightman's appeal.

{¶ 17} Wightman appealed the trial court's dismissal to this court. While that appeal was pending, the parties jointly moved for a remand of the matter to the commission for a full hearing. This court approved the motion, dismissed Wightman's appeal, and remanded the matter to the trial court for consideration of the parties' joint motion. The trial court then remanded the matter to the commission.

{¶ 18} Upon reacquiring jurisdiction over the matter, the commission directed a hearing examiner to hold a full hearing. At that two-day hearing, Wightman and Sandra testified to the facts set forth above. Division investigator Michael Bannister also testified.

{¶ 19} In his combined closing argument and posthearing brief, Wightman argued that the commission lacked jurisdiction over the matter because the Division failed to comply with the time restrictions contained in R.C. 4735.051(D). Assuming that the commission could hear the matter, Wightman argued that he had not violated R.C. 4735.59 because he did not change the party he was representing with regard to the sale of the duplex. Instead, Wightman contended, his role shifted from representing the Meyerses to acting on his own behalf as the buyer. Because he never represented "another party in the transaction," i.e., he did not serve as agent to another principal involved in the transaction, Wightman asserted that the circumstances did not implicate R.C. 4735.59.

{¶ 20} Although the hearing examiner rejected Wightman's jurisdictional argument, she found his second argument meritorious. In her report and recommendation, the hearing examiner concluded that Wightman "did not violate R.C. § 4735.59 because when [Wightman] terminated his relationship with the Meyerses, he did not do so to represent 'another party' in the real estate transaction. [Wightman] was acting on his own behalf and was not representing himself within the meaning of the principal/agent relationship." Thus, the hearing examiner recommended that the commission find no violation of R.C. 4735.18(A)(9) as it incorporates R.C. 4735.59.

{¶ 21} The commission disapproved the hearing examiner's recommendation. In its January 15, 2010 order, the commission found that because Wightman had failed to obtain the Meyerses' written consent to discontinue his representation and to represent himself as a buyer, Wightman violated R.C. 4735.18(A)(9) as it incorporates R.C. 4735.59. The commission assessed a $1,000 civil penalty and required Wightman to submit proof to the Division that he had completed three hours of education in agency.

{¶ 22} Pursuant to R.C. 119.12, Wightman appealed the commission's order to the trial court. On June 23, 2010, the trial court issued a decision and entry affirming the commission's order. Wightman now appeals the trial court's judgment to this court, and he assigns the following errors:

 [1.] The trial court erred when it affirmed the January 15, 2010, adjudication order, because appellant did not enter into an agency relationship with another party.

 [2.] The trial court erred when it affirmed the January 15, 2010, adjudication order, because the charge against the appellant was not brought timely.

 [3.] The trial court erred when it affirmed the January 15, 2010, adjudication order, because the reliable, substantial and probative evidence demonstrated that the sellers consented to Mr. Wightman's offer and any change in representation, if any, in writing.

{¶ 23} Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the court must consider the entire record to determine if the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. If a party or agency appeals the trial court's judgment on the agency's order, an appellate court will review any challenge to the trial court's evaluation of the evidence under the abuse-of-discretion standard. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When reviewing the trial court's judgment as to whether an agency's order is in accordance with law, an appellate court's review is plenary. *Spitznagel v. State Bd. of Edn.*, 126 Ohio St.3d 174, 2010-Ohio-2715, 931 N.E.2d 1061, ¶ 14.

{¶ 24} We will address Wightman's second assignment of error first because it attacks the commission's jurisdiction to discipline Wightman. By this assignment of error, Wightman argues that the Division's failure to comply with the time requirements contained in R.C. 4735.051(D) deprived the commission of authority to adjudicate the charge against him. We disagree.

{¶ 25} R.C. 4735.051(D) states that within 60 business days of the Division's receipt of a complaint against a licensed real estate broker or a licensed real estate salesperson, a Division investigator must file a written report of the results of his or her investigation into the licensee's conduct with the superintendent. Within 14 business days of receiving the report, the superintendent must determine whether there exists reasonable and substantial evidence that a licensee violated R.C. 4735.18(A). R.C. 4735.051(D); *Boggs v. Ohio Real Estate Comm.*, 186 Ohio App.3d 96, 2009-Ohio-6325, 926 N.E.2d 663, ¶ 15. If the superintendent finds that such evidence exists, then within seven business days of that determination, the superintendent must notify the complainant and licensee of the date of an R.C. Chapter 119 hearing. Id.

{¶ 26} Here, the evidence demonstrates that the Division received Sandra's complaint against Wightman on July 13, 2006. Thus, pursuant to R.C. 4735.051(D)'s 60–business–day deadline, the Division investigator had to file his report with the superintendent by October 6, 2006. The Division investigator missed that deadline by over a month, not filing his report with the superintendent until November 13, 2006.

{¶ 27} Wightman contends that the superintendent, like the investigator, also botched the time restrictions of R.C. 4735.051(D). We reject this contention. Despite the investigator's initial delay, the superintendent complied with the time limitations imposed on her. The superintendent notified Wightman and Sandra of the scheduled hearing regarding the alleged misconduct on November 30, 2006. Thus, the superintendent determined that reasonable and substantial evidence established a violation of R.C. 4735.18(A) *and* issued the appropriate notification within 12 business days of receiving the investigator's report. The superintendent completed both actions within the 14–business–day period that R.C. 4735.051(D) granted her to perform the first action.[1]

{¶ 28} Nevertheless, because the investigator failed to meet his statutory deadline, we must consider Wightman's argument that noncompliance with R.C.

---

1. Wightman asserts that the state stipulated "that the time periods for bringing the charge against Mr. Wightman were not met." This assertion misstates the record. In fact, the state only "stipulate[d] to the two dates." In other words, the state stipulated that November 13, 2006, was the date on which the investigator submitted his report to the superintendent and that November 30, 2006, was the date on which the superintendent issued the notification.

4735.051(D) divested the commission of jurisdiction to proceed on Sandra's complaint. Wightman premises this argument on the statutory language. Wightman contends that the time frame at issue is mandatory because R.C. 4735.051(D) states that the investigator "shall" file the report in 60 business days. Recent precedent from this court establishes that the time provisions of R.C. 4735.051(D) are directory, not mandatory. *Barlow v. Ohio State Dept. of Commerce, Div. of Real Estate & Professional Licensing,* 10th Dist. No. 09AP–1050, 2010-Ohio-3842, 2010 WL 3250383, ¶ 31; *Boggs* at ¶ 26–28. Consequently, the Division's failure to act within the statutory time periods does not strip the commission of jurisdiction. Id. Moreover, the failure to meet the time limitations does not even amount to reversible error unless the licensee can demonstrate that the delay prejudiced him or her. Id.

{¶ 29} Wightman urges this court to abandon *Barlow* and *Boggs* and adopt the reasoning of *Royer v. Ohio Real Estate Comm.* (1999), 131 Ohio App.3d 265, 722 N.E.2d 172. In *Royer,* the court analyzed the meaning of "shall" in R.C. 119.07 and concluded that because "the term 'shall' appears in R.C. 119.07 fifteen times[,] * * * [t]he clear language of the statute creates a mandatory duty upon agencies to schedule hearings within fifteen days." Id. at 270. The *Royer* court then reasoned that this mandatory duty applied to the Division because R.C. 4735.051(D) includes a similar timing requirement. Id.

{¶ 30} We decline to follow *Royer* for three reasons. First, *Royer* is a decision from the Third District Court of Appeals and, thus, it is not controlling authority for this court. *Hewitt v. Columbus,* 10th Dist. No. 08AP–1087, 2009-Ohio-4486, 2009 WL 2759735, ¶ 21. Second, neither R.C. 119.07 nor the timeliness of Wightman's adjudication hearing is at issue here, so *Royer* has no direct application to the case at bar. Third, the *Royer* court failed to take into account the general rule that "a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure." *State ex rel. Jones v. Farrar* (1946), 146 Ohio St. 467, 66 N.E.2d 531, paragraph three of the syllabus. Our holding in *Barlow* and *Boggs* turned on the application of this rule. *Royer,* instead, relied on *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 271 N.E.2d 834, for the proposition that courts usually interpret the word "shall" as mandatory. However, in the majority of cases interpreting time limitations on official action, *Farrar,* not *Dorrian,* is the appropriate precedent. As the Supreme Court of Ohio has stated, "*Dorrian* essentially dealt with the question whether there was a mandatory duty to act, and not when the act was to be done." *State ex rel. Webb v. Bryan City School Dist. Bd. of Edn.* (1984), 10 Ohio St.3d 27, 31, 460 N.E.2d 1121. See also *State ex rel. Harrell v. Streetsboro City School Dist. Bd. of Edn.* (1989), 46 Ohio St.3d 55,

64, 544 N.E.2d 924 (rejecting *Dorrian* in favor of *Farrar* for the same reason). Thus, "*Dorrian* does not pertain when the statutory language at issue relates to 'the manner or time in which power or jurisdiction vested in a public officer is to be exercised.'" *Boggs* at ¶ 23, quoting *Schick v. Cincinnati* (1927), 116 Ohio St. 16, 155 N.E. 555, paragraph one of the syllabus.

{¶ 31} Next, Wightman argues that *Farrar*'s general rule for construing an enactment's time limitations as directory only applies to statutes that impose time requirements on tribunals. We cannot countenance such a reading of *Farrar*. By its own terms, *Farrar*'s general rule applies to statutes that set the time "for the performance of *an official duty*." (Emphasis added.) Id. at paragraph three of the syllabus. Wightman does not cite, nor have we located, any authority that limits the application of *Farrar* to statutes governing tribunals.

{¶ 32} Finally, Wightman asserts that this court should follow *Mazza v. Ohio Real Estate Comm.* (Oct. 24, 2008), Franklin C.P. No. 08CVF04–6000. There, the trial court held that the commission lacked jurisdiction to discipline a licensee when the state failed to establish that the superintendent complied with the R.C. 4735.051(D) deadlines for determining to pursue charges and notifying the licensee and complainant of the charges. Because *Mazza* is a decision from a court of common pleas, it does not bind this court. *Dalton v. Wilson*, 10th Dist. No. 01AP–014, 2002-Ohio-4015, 2002 WL 1813508, ¶ 73. Moreover, our decisions in *Barlow* and *Boggs* impliedly overruled *Mazza*, eliminating whatever persuasive authority it once had.

 {¶ 33} Applying *Barlow* and *Boggs* to this case, we hold that the commission had jurisdiction to proceed against Wightman, despite the investigator's belated filing of his report with the superintendent. Furthermore, as Wightman failed to demonstrate any prejudice resulting from the investigator's noncompliance with R.C. 4735.051(D), that noncompliance does not provide a ground for reversal of the commission's order. Accordingly, we overrule Wightman's second assignment of error.

 {¶ 34} By Wightman's first assignment of error, he argues that he did not violate R.C. 4735.59 because he never represented another party to the real estate transaction involving the Meyerses' duplex. We agree.

{¶ 35} R.C. 4735.59 provides:

To change the party a licensee represents in a real estate transaction after an agency disclosure statement has been signed and dated or following verbal disclosure of the agency relationship, the licensee shall obtain written consent from the party originally represented to represent another party in the transaction.

Wightman asserts that this statute is inapplicable here because he did not change the party whom he represented. Rather, according to Wightman, he attempted to terminate his agency relationship with the Meyerses so that he could purchase the duplex himself. In other words, Wightman sought to stop representing the Meyerses not so he could begin representing another party to the real estate transaction, but instead, to act on his own behalf. In arguing to the contrary, the state contends that Wightman switched from representing the Meyers to representing himself. According to the state, Wightman failed to obtain the Meyerses' written consent before making this switch, thus violating R.C. 4735.59. Wightman counters that it is impossible for him to have represented himself because, under agency law, a person cannot form an agency relationship with himself.

{¶ 36} As the parties recognize, the resolution of their dispute turns on the meaning of the word "represent" as it is used in R.C. 4735.59. Thus, the parties present this court with a legal question that we determine de novo on appeal. *Gilman v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 154, 2010-Ohio-4992, 937 N.E.2d 109, ¶ 8.

{¶ 37} Nothing in R.C. Chapter 4735 defines "represent." When a word is not defined, courts use its common, ordinary, and accepted meaning unless it is contrary to clear legislative intent. *Am. Fiber Sys., Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468, 928 N.E.2d 695, ¶ 24; *Cincinnati City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 122 Ohio St.3d 557, 2009-Ohio-3628, 913 N.E.2d 421, ¶ 15. Pursuant to Webster's Third New International Dictionary (1986), to "represent" means "to supply the place, perform the duties, exercise the rights, or receive the share of: take the place of in some respect: fill the place of for some purpose: substitute in some capacity for: act the part of, in the place of, or for (as another person) usu[ally] by legal right." Id. at 1926. Similarly, the Oxford English Dictionary (3d Ed.2010) defines "represent" to mean "[t]o take or fill the place of[;] [t]o assume or occupy the role or functions of (a person), typically in restricted, and usually formal situations; to be entitled to speak or act on behalf of (a person, group, organization, etc.); (in later use *esp.*) to act or serve as the spokesperson or advocate of." Thus, to "represent," one person takes the place of another and acts for the other. Given this definition, a person cannot "represent" himself because the act of "representing" requires the existence of another for whom the representative serves.

{¶ 38} The definition of "represent" is consistent with the agency principles that underlie R.C. 4735.59. An agency relationship contemplates the involvement of two persons: a principal and an agent. *Lewis v. Ohio Real Estate Comm.* (1997), 121 Ohio App.3d 23, 27, 698 N.E.2d 1023. When an agent acts on a principal's behalf, the agent represents the principal. Just as one person

cannot represent himself, a single person cannot form an agency relationship with himself. Id.

{¶ 39} In the case at bar, the only people Wightman ever represented, i.e., acted as an agent for, were the Meyerses. Wightman sought to end his representation of the Meyerses not to represent another party, but to pursue his own interests. Because Wightman did not exchange the Meyerses for another principal, R.C. 4735.59 does not pertain to Wightman's actions.

{¶ 40} The state, however, contends that R.C. 4735.59 requires written consent whenever a licensee who was once an agent for the seller participates in a real estate transaction where he is no longer acting solely on the seller's behalf. Essentially, the state asks this court to ignore the portion of R.C. 4735.59 that limits the statute's application to circumstances in which a licensee seeks "[t]o change the party a licensee represents." While public-policy reasons may exist for extending the reach of R.C. 4735.59, our duty is to construe the statute as written. *State ex rel. Butler. Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 124 Ohio St.3d 390, 2010-Ohio-169, 922 N.E.2d 945, ¶ 22. By the plain language of R.C. 4735.59, it governs only those situations in which a licensee discontinues his representation of one party to represent another party to the real estate transaction. Because we cannot rewrite statutes in the guise of statutory interpretation, we decline to adopt the state's overly broad construction of R.C. 4735.59. *Estate of Heintzelman v. Air Experts, Inc.*, 126 Ohio St.3d 138, 2010-Ohio-3264, 931 N.E.2d 548, ¶ 15, quoting *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 14. (" '[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom' "); *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus (holding that when interpreting statutes, courts must give effect to the words used, not delete words used or insert words not used).

{¶ 41} Under the uncontroverted facts, Wightman did not change the party he represented in the sale of the Meyerses' duplex, and thus, he did not violate R.C. 4735.59. Accordingly, we sustain Wightman's first assignment of error.

{¶ 42} Given our ruling on Wightman's first assignment of error, his third assignment of error is moot. We thus decline to rule upon it.

{¶ 43} For the foregoing reasons, we sustain the first assignment of error, overrule the second assignment of error, and find the third assignment of error moot. We reverse the judgment of the Franklin County Court of Common Pleas,

and we remand this case to that court so that it may reverse the commission's order.

Judgment reversed
and cause remanded.

TYACK and CONNOR, JJ., concur.