THE STATE, EX REL. PINZONE, APPELLEE, *v.* CITY OF CLEVELAND ET AL., APPELLANTS.

(No. 72-570—Decided April 18, 1973.)

*Messrs. Sweeney, Mahon & Vlad, Mr. Robert E. Sweeney* and *Mr. Timothy M. Bittel,* for appellee.

*Mr. Richard R. Hollington, Jr.,* director of law, *Mr. Malcolm C. Douglas* and *Mr. Wayne C. Dabb, Jr.,* for appellants.

O'Neill, C. J. Section 191 of the Charter of the city of Cleveland, in pertinent part, provides:

"The council shall by ordinance establish a schedule of compensation for officers and employes in the classified service, which schedule shall be *in accordance with the prevailing rates* of salary or compensation for such services, shall provide for like services, and shall provide minimum and maximum rates (which may be identical) of salary or compensation for each grade and classification of positions determined by the civil service commission under section 126 of this charter. For the guidance of council in determining the foregoing schedule the civil service commission shall prepare salary or compensation schedules, and the mayor or any director may, and when required by council shall, prepare suggested salary or compensation schedules." (Emphasis added.)

Section 1.4754 of the Cleveland Municipal Code, in pertinent part, provides:

"In the case of positions involving the building trades an ordinance *shall* be introduced in council at such time as the prevailing rate is established by negotiation with employers generally in the city of Cleveland, which ordinance, when passed, shall be in effect for a period of one year thereafter." (Emphasis added.)

Since the enactment of Section 1.4754 in 1948, the city council has, from time to time, enacted ordinances which established wage rates for construction workers employed by the city, which are the same as wage rates for tradesmen similarly employed by private industry. The latest such ordinance, enacted in 1970, was based upon three-year agreements, effective May 1, 1970, which established prevailing wage rates for skilled building trades laborers in the Cleveland area. Although these contracts provide for wage increases, effective May 1, 1971, the city has failed to enact ordinances to bring the city's wage rates up to the prevailing level in private industry.

Appellants contend that the setting of wage rates to be paid municipal employees is a matter of legislative discretion. Further, appellants contend that the requirement

that municipal wage rates conform to a prevailing community standard is an unlawful delegation of legislative authority.

Subsequent to the bringing of this action, this court decided *Fuldauer* v. *Cleveland* (1972), 32 Ohio St. 2d 114, which dealt with similar propositions. *Fuldauer* involved a challenge to two sections of the Cleveland city charter which "established a formula by which the basic rates of compensation of the members of the fire department and of the members of the police department are to be computed annually." This formula began with an annual survey of the current wage rates of other metropolitan communities in Ohio. City council, pursuant to this survey, was required to enact legislation establishing a rate of pay for Cleveland policemen and firemen which was three percent in excess of the highest rate of pay in communities of 50,-000 or more population.

Speaking to the contention that the charter provision is an unlawful delegation of legislative authority, this court, per Corrigan, J., stated, at page 121:

"The formula for salary adjustments, which we have before us in these charter amendments, that tie the adjustments into future events which do not lie within the power or control of the council does not constitute an unlawful delegation of power. It is not unlike a formula which links the wage adjustment to the cost of living index, to average earnings or prevailing wages of a comparable occupation, or to average earnings or prevailing wages generally."

It is clear that, in *Fuldauer*, this court considered the precise question with which it is presently faced—the establishment of municipal wage rates based upon prevailing wages generally—and found such method to be a lawful delegation of legislative authority. The court sees no reason for rejecting that view now.

However, appellants also assert that, requiring wage rates of municipal employees to be "* * * 'in accordance with the prevailing rates of salary or compensation for such services' must be construed to require only that the

schedule of compensation established by council be in general conformity with the prevailing rates for such services and not in mathematical equality."

In support of that proposition, appellants quote from *San Francisco* v. *Boyd* (1943), 22 Cal. 2d 685, 690, 140 P. 2d 666, as follows:

"In our opinion, the phrases ["in accord with" and "the prevailing rates of compensation"] do not require that the rates of wages recommended by the commission or fixed by the board be identical with or not higher than the generally prevailing rates, but rather that there be a reasonable or just correspondence between the rates established and those elsewhere prevailing, *i. e.*, that they be in harmony with and substantially conform to such other rates."

The court, in *Boyd*, made that statement in holding that rates of pay of between 85 and 97½ cents per hour for municipal mass transportation drivers were proper, although the prevailing wage rates in private industry were between 70 and 93½ cents per hour.

*Boyd* clearly does not support appellants' position. First, *Boyd* requires that there be "substantial conformance," not merely "general conformity" as pressed by appellants. Second, the rates of pay offered the municipal employees in *Boyd* averaged in excess of the rates of pay in private industry, whereas in this case the reverse is true. This second distinction is important, particularly in view of the objective underlying prevailing wage laws, which is to encourage qualified individuals to seek government employment. See *Walker* v. *Los Angeles* (1961), 55 Cal. 2d 626, 361 P. 2d 247.

*Walker* is more factually close to the present case than *Boyd*. *Walker* arose because the responsible government entity failed to enact a current wage schedule conforming to the prevailing standard. Although a survey of the then present prevailing wage schedule was before the Los Angeles board of supervisors, the ordinance enacted provided a continuation of the previous year's schedule. The Supreme Court of California affirmed the trial court's holding that: " * * * the board's act in adopting the * * * salary

ordinance was done 'arbitrarily and capriciously and was so palpably unreasonable as to demonstrate an abuse of discretion as a matter of law.' '' See, also, *Sanders* v. *Los Angeles* (1970), 90 Cal. Rptr. 169, 475 P. 2d 201.

The rule derived from those cases, including *Boyd,* is that municipal wage schedules must be in ''substantial conformance'' with the prevailing wage in private industry. It is also apparent that, although municipal wage scales slightly in excess of private scales may be permissible under the substantial conformance rule, the reverse is generally not accepted by the courts.

Appellants assert, in conjunction with their ''general conformity'' argument, that fringe benefits are permissibly included in their determination of prevailing wage schedules. They argue that such items as paid sick leave, greater job security and more steady employment may be offset against the higher base wage in private industry.

Section 191 of the Cleveland charter speaks in terms of ''salary or compensation.'' The city, in enacting its salary ordinances, has consistently applied this language to achieve base wage equivalence. Furthermore, sick leave is certainly not the equivalent of salary. Its receipt is dependent upon the future uncertain event of illness, whereas salary is sure to be received for work performed.

Past indications of relative job security or regularity of employment are a poor measure of the future, especially in the volatile economic setting of the construction industry.

Permitting an offset for such ''fringe benefits'' would necessarily encourage arbitrary and probably inaccurate lowerings of the base municipal wage scale. Clearly, this is not the intent or meaning of Section 191.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, POTTER, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

POTTER, J., of the Sixth Appellate District, sitting for CORRIGAN, J.