PRINCETON CITY SCHOOL DISTRICT, BOARD
OF EDUCATION et al., Appellants,

v.

OHIO STATE BOARD OF EDUCATION et al., Appellees.*

[Cite as *Princeton City School Dist. Bd. of Edn. v. Ohio
State Bd. of Edn.* (1994), 96 Ohio App.3d 558.]

Court of Appeals of Ohio,
Hamilton County.

No. C–930214.

Decided Aug. 17, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 71 Ohio St.3d 1444, 644 N.E.2d 407.

*Rendigs, Fry, Kiely & Dennis* and *John W. Hust,* for appellants.

*Lee Fisher,* Attorney General, and *Karin E. Wilson,* Assistant Attorney General, for appellees.

*Per Curiam.*

In 1989, the Ohio General Assembly created the Educational Management Information System ("EMIS"). R.C. 3301.0714. EMIS is a statewide computer information network for Ohio public schools. EMIS has three main components: the statute itself (R.C. 3301.0714), a rule (Ohio Adm.Code 3301–14–01), and guidelines. Four local boards of education—Princeton, Reading, Kings, and North College Hill (appellants)—challenged the constitutionality of all three components.[1] Appellants brought a declaratory judgment action against the Ohio State Board of Education ("state board"), the Ohio Department of Education ("department of education"), and Ted Sanders, the state Superintendent of Public Instruction.[2] The Department of Education consists of the state board and the superintendent. The Department of Education is the administrative unit through which the board seeks to administer EMIS. R.C. 3301.13 and 3301.0714(A).

In the action below, the court invalidated the portion of the statute that required school officials to collect staff social security numbers. Pursuant to R.C. 1.50, the court severed that section of the statute. The court, however, upheld the remaining portions of EMIS.

In this appeal, appellants challenge the trial court's judgment in two assignments of error. In the first assignment, they argue that R.C. 3301.0714 is an improper delegation of legislative authority. Specifically, they contend that the legislature cannot allow an administrative body to create rules and guidelines without using the rulemaking process provided in the Administrative Procedure Act, R.C. Chapter 119 ("APA"). In the second, appellants contend that R.C.

---

1. Appellants also specifically challenged Section 5 of H.B. No. 437, the bill that established the present version of EMIS. To the extent that we refer to this portion of the assignment of error, we confine ourselves to the version that exists as uncodified law at 144 Ohio Laws 5514–5515.

2. Under R.C. 2721.12, when the constitutionality of a statute is challenged, the Ohio Attorney General "shall also be served with a copy of the proceeding and shall be heard." In this case, the Attorney General is presumed to have been notified because he has represented appellees both in the trial below and on appeal. See, generally, *Ohioans for Fair Representation, Inc. v. Taft* (1993), 67 Ohio St.3d 180, 184, 616 N.E.2d 905, 908.

3301.0714 violates the federal Family Educational and Privacy Rights Act, Section 1232g, Title 20, U.S.Code ("FEPRA"). FEPRA denies federal funds to schools that release certain student education records. For the reasons that follow, we overrule both assignments of error.

## FIRST ASSIGNMENT OF ERROR: DELEGATION

Our analysis of appellants' delegation argument begins with the fundamental proposition that the legislative power of this state is vested in the General Assembly. Section 1, Article II, Ohio Constitution. The Ohio General Assembly has a "plenary grant of power" to pass any statute that does not conflict with the state or federal constitutions. *State ex rel. Jackman v. Court of Common Pleas* (1967), 9 Ohio St.2d 159, 161–162, 38 O.O.2d 404, 405–406, 224 N.E.2d 906, 909. One constitutional limit on the general assembly is the prohibition against delegating "legislative power." *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 342, 28 O.O. 295, 300–301, 55 N.E.2d 629, 635; see, also, *Panama Refining Co. v. Ryan* (1935), 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (federal analog). Given that limit, however, the general assembly constitutionally may delegate rulemaking authority to subordinate boards and agencies. *Belden* at 342, 28 O.O. at 300–301, 55 N.E.2d at 635.

Delegation of rulemaking authority is a necessary response to the increasing complexity of modern government. *In re Adoption of Uniform Rules and Regulations Relating to Valuation of Real Property* (1959), 169 Ohio St. 445, 455, 8 O.O.2d 465, 469–470, 160 N.E.2d 275, 281–282; *Zangerle v. Evatt* (1942), 139 Ohio St. 563, 573, 23 O.O. 52, 55–57, 41 N.E.2d 369, 373–374; 1 Davis & Pierce, Administrative Law Treatise (1994) 77–79, Section 2.6; 3 Stein, Mitchell & Mezines, Administrative Law (1993) 13–2, Section 13.01. Concerning school boards specifically, the Ohio Supreme Court has recognized a particular need to allow the legislature to delegate broad powers. *Ohio Assn. of Public School Employees v. Stark Cty. Bd. of Edn.* (1992), 63 Ohio St.3d 300, 304, 587 N.E.2d 293, 296 ("*OAPSE*"), citing *Panama Refining*. As a general matter, if the legislature provides a sufficient policy statement in the enabling statute, the delegation of rulemaking is proper. *In re Rules*, 169 Ohio St. at 455, 8 O.O.2d at 469–470, 160 N.E.2d at 281–282; *Matz v. J.L. Curtis Cartage Co.* (1937), 132 Ohio St. 271, 276, 8 O.O. 41, 44–45, 7 N.E.2d 220, 224–225. In the words of Justice Cardozo in his dissenting opinion in *Panama Refining*, which dissent is cited with approval in *Matz*, the statute must define policy so that the rule is "canalized within banks that keep it from overflowing." *Matz*, 132 Ohio St. at 280, 8 O.O. at 45, 7 N.E.2d at 225. When the rule is not "unconfined and vagrant" it is a permissible delegation of legislative authority. *Id.*

As a result of these legal precepts and administrative necessities, the Ohio General Assembly has developed an extensive body of administrative law. The legislature has created a complex of administrative agencies with both quasi-legislative and quasi-judicial powers. See, generally, R.C. 119.01(A). It also created the elaborate statutory framework of the APA to govern the activities of those administrative bodies. R.C. 119.01 to 119.13. The APA, which itself is a creation of the legislature, was passed in 1943. 120 Ohio Laws 358. The legislature required certain agencies with rulemaking power to use the APA notice-and-hearing procedures. R.C. 119.01(A). The General Assembly also listed certain boards and agencies to which the notice-and-hearing provisions of the APA do not apply. R.C. 119.01(A). When those agencies have acted within their statutorily delegated boundaries, the Ohio Supreme Court has approved the legislature's delegation of rulemaking authority.[3]

As a general matter, the rulemaking functions of the Department of Education, which includes the state board, are subject to R.C. Chapter 119. R.C. 3301.13; *Rossford Exempted Village School Dist. v. State Bd. of Edn.* (1989), 45 Ohio St.3d 356, 358, 544 N.E.2d 651, 653. Concerning the statutory policy directives in EMIS, the legislature indicated that it wanted the state board to create a vast computer network to collect, compile, and report certain kinds of data. R.C. 3301.0714. The statute specifically detailed the data that the legislature wanted compiled and reported. The statute directed the state board of education to collect information on student participation, performance, classroom enrollment, and demographics. R.C. 3301.0714(B). In addition, ostensibly to ensure account-ability, the legislature required the board to prepare a report for public distribu-tion based on this information. R.C. 3301.0714(H). With this degree of specifici-ty, this EMIS statute has provided more exact policies and standards than previous cases in which the Ohio Supreme Court has approved rulemaking delegation. See, generally, *OAPSE*, 63 Ohio St.3d at 304, 587 N.E.2d at 296; *In re Rules* at 455, 8 O.O.2d at 469–470, 160 N.E.2d at 281–282.

---

**3.** For examples of proper delegation see, generally, *State v. Gill* (1992), 63 Ohio St.3d 53, 584 N.E.2d 1200; *State ex rel. Harrell v. Bd. of Edn.* (1989), 46 Ohio St.3d 55, 544 N.E.2d 924; *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 539 N.E.2d 103; *Consol. Mgt., Inc. v. Cleveland* (1983), 6 Ohio St.3d 238, 6 OBR 307, 452 N.E.2d 1287; *Blue Cross of Northeast Ohio v. Ratchford* (1980), 64 Ohio St.2d 256, 18 O.O.3d 450, 416 N.E.2d 614; *Consumers' Counsel v. Public Util. Comm.* (1979), 58 Ohio St.2d 108, 12 O.O.3d 115, 388 N.E.2d 1370; *State ex rel. Pinzone v. Cleveland* (1973), 34 Ohio St.2d 26, 63 O.O.2d 46, 295 N.E.2d 408; *State v. Switzer* (1970), 22 Ohio St.2d 47, 51 O.O.2d 69, 257 N.E.2d 908; *Jackman*, 9 Ohio St.2d at 162, 38 O.O.2d at 406, 224 N.E.2d at 913; *Zangerle*, 139 Ohio St. at 573, 23 O.O. at 55–56, 41 N.E.2d at 373; *Matz* at 276, 8 O.O. at 47–48, 7 N.E.2d at 227; *Coady v. Leonard* (1937), 132 Ohio St. 329, 8 O.O. 81, 7 N.E.2d 649, paragraph one of the syllabus; *Thompson v. Marion* (1938), 134 Ohio St. 122, 127, 11 O.O. 549, 552, 16 N.E.2d 208, 211; *Green v. Civ. Serv. Comm.* (1914), 90 Ohio St. 252, 256, 107 N.E. 531, 532.

■ Pursuant to this "canalized" policy statement, the statute directed the state board to adopt a rule for EMIS and develop guidelines within the confines of that rule for the establishment and maintenance of the system. R.C. 3301.0714(A). The state board promulgated the rule for the operation of EMIS through the rulemaking process outlined in R.C. 119.01 to 119.13. As the legislature directed, however, the board did not create the guidelines within the APA. R.C. 119.01(C).

The trial court was persuaded that the legislature intended for the "guidelines" to be exempt from R.C. Chapter 119. Therefore, the court reasoned, the statute, rule, and guidelines were valid.[4] Even though we agree with the decision of the trial court, we come to our conclusion for a different reason. For the purposes of the APA, the legislature has defined the term "rule," but not the term "guideline." R.C. 119.01(C) and 111.15(A)(1). By analyzing the substance, rather than the nomenclature, of these provisions, we accept the Attorney General's argument that these are guidelines, not rules. When the legislature created EMIS, it directed the state board to create a rule to implement the information system. The board did that by enacting Ohio Adm.Code 3301–14–01 within the rulemaking process in R.C. Chapter 119. In the statute, the legislature gave the state board explicit instructions on what information to include in the system. It left to the guidelines only the procedures for how to identify, collect, implement, and report the data. The rule tracks the statute and describes, in general terms, procedures to be developed to implement the EMIS information system. The rule, therefore, is constitutionally sound. See, generally, *Peachtree Dev. Co. v. Paul* (1981), 67 Ohio St.2d 345, 351, 21 O.O.3d 217, 221–222, 423 N.E.2d 1087, 1093.

■ The guidelines, on the other hand, are a kind of instruction manual showing methods and alternatives to identify, compile, collect and report the data.

---

4. The court's determination on social security numbers is not a subject of this appeal.

The trial court also rejected an alternate ground advanced by appellees that would have upheld the constitutionality of EMIS. Section 26, Article II of the Ohio Constitution states that:

"nor, shall any act, except such as relates to the public schools, be passed to take effect upon the approval of any other authority than the General Assembly, except as provided in this constitution."

Appellees contended that this constitutional exemption allowed the state board to pass laws that "take effect" without the *imprimatur* of the General Assembly.

We also do not accept this rationale because, in recent years, this constitutional exemption has been used only for the process of annexing school boundaries to school districts. *State ex rel. Harrell v. Bd. of Edn.* (1989), 46 Ohio St.3d 55, 63, 544 N.E.2d 924, 932; *Rossford* at 356, 544 N.E.2d at 651; *Bd. of Edn. v. State Bd. of Edn.* (1976), 45 Ohio St.2d 117, 74 O.O.2d 215, 341 N.E.2d 589; but, see, earlier Ohio Supreme Court case extending this lawmaking authority to broader issues such as transportation to and from schools, *Minshall v. State ex rel. Merritt* (1931), 124 Ohio St. 61, 176 N.E. 888.

For example, the statute creates the duty for districts to report the "numbers of students receiving each category of instruction service, * * * such as * * * specialized instruction programs." R.C. 3301.0714(B)(1)(a). On that same subject, the guidelines indicate that the districts may report numbers of students in special instruction in one of three forms—as one self-contained class with one special education subject, as several classes with one special education subject, or as several classes using general subject codes. Guidelines 4–35, 4–36. Because these guidelines merely control the procedure by which the duties in the statute and rule must be performed, they are distinct from the rules in cases such as *Condee v. Lindley* (1984), 12 Ohio St.3d 90, 91, 12 OBR 79, 80–81, 465 N.E.2d 450, 452; *McLean Trucking Co. v. Lindley* (1982), 70 Ohio St.2d 106, 113, 24 O.O.3d 187, 191–192, 435 N.E.2d 414, 419; *Ohio Nurses Assn., Inc. v. State Bd. of Nursing Edn. & Nurse Registration* (1989), 44 Ohio St.3d 73, 76, 540 N.E.2d 1354, 1356–1357; *Ohio Dental Hygienists Assn. v. State Dental Bd.* (1986), 21 Ohio St.3d 21, 25, 21 OBR 282, 285–286, 487 N.E.2d 301, 304.

Furthermore, as with any constitutional question, the court presumes that the statute is valid and it is incumbent on the challengers to demonstrate its impropriety. *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus; *Beatty v. Akron City Hosp.* (1981), 67 Ohio St.2d 483, 493, 21 O.O.3d 302, 308, 424 N.E.2d 586, 593. In this case, to show that the guidelines are actually rules, the appellants would have to show that they would be penalized for noncompliance. *Doyle v. Ohio Bureau of Motor Vehicles* (1990), 51 Ohio St.3d 46, 47, 554 N.E.2d 97, 99; see, also, *McLean Trucking,* 70 Ohio St.2d at 115, 24 O.O.3d at 192–193, 435 N.E.2d at 419–420. There is nothing in the record to illustrate how these guidelines would be enforced.

Finally, the Ohio Supreme Court has treated the grant of rulemaking authority to boards of education broadly. *OAPSE,* 63 Ohio St.3d at 304, 587 N.E.2d at 296, citing *Panama Refining.* Therefore, because the legislature created EMIS and identified with great specificity the information that the state board was to report, it has not delegated its legislative authority. It has merely left the state board, *vis-a-vis* the department of education, with the flexibility to determine how the data collection will be effectuated. These guidelines, therefore, are not rules within the meaning of *Condee, McLean Trucking, Ohio Nurses Assn.,* and *Ohio Dental Hygienists.* As such, the guidelines were properly exempted from the APA.

For these reasons, we overrule the first assignment of error.

## SECOND ASSIGNMENT OF ERROR: PREEMPTION

In their second assignment of error, appellants contend that the trial court erred when it found that if the state board violated the privacy provisions of

FEPRA, the sole avenue for relief was through Section 1232g, Title 20, U.S.Code. In the body of appellants' discussion it is apparent that this assignment is essentially a preemption argument based on an actual conflict between the statutes. See, generally, *In re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 259–260, 626 N.E.2d 85, 89.

A federal statute may preempt a state law when Congress has expressly stated its intent to preempt or when Congress has so pervasively occupied the field of regulation that it has left no room for state law.[5] *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm.* (1983), 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752, 765; *Silkwood v. Kerr–McGee Corp.* (1984), 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443, 452–453; *Penn. RR. Co. v. Public Serv. Comm. of Penn.* (1919), 250 U.S. 566, 40 S.Ct. 36, 64 L.Ed. 1142. Federal law also may preempt a state statute when there is an actual conflict between the provisions. *Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248, 257–258.

Under the preemption doctrine, one manner in which a state law may actually conflict with a federal statute is if it frustrates the purpose of the federal legislation. *Hines v. Davidowitz* (1941), 312 U.S. 52, 66–67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 586–587. The purpose of FEPRA is to achieve a balance between the students' interest in privacy and the government's interest in evaluating a school system. H.Rep. No. 93–805, 93d Cong., 2d Sess. 3, reprinted in 1974, U.S.Code Cong. & Ad.News 4093, 4251. Regarding that balance between privacy and evaluation, FEPRA and EMIS are consistent because they both expressly prohibit the reporting of personally identifiable information related to any student. Section 1232g(a)(4)(A)(i), Title 20, U.S.Code; R.C. 3301.0714(D); Guidelines 3–9. Furthermore FEPRA contains exemptions that allow the release of EMIS-type information to certain education officials. Specifically, FEPRA states that education records may be released to organizations conducting studies for educational agencies for "improving instruction." Section 1232g(b)(1)(F), Title 20, U.S.Code. FEPRA also provides that educational records may be released to local education officials to audit and evaluate "any * * * State supported education program." Section 1232g(b)(5), Title 20, U.S.Code.

Contrary to appellants' argument, they have the burden of showing that EMIS unconstitutionally conflicts with FEPRA. See, generally, *State ex rel. Dickman* at paragraph one of the syllabus; *Beatty*, 67 Ohio St.2d at 493, 21 O.O.3d at 308, 424 N.E.2d at 593 (burden of proof in constitutional claims generally). Appellants have made no attempt to meet their burden by showing that EMIS does not

---

5. Appellants, correctly, do not raise either of these preemption arguments in their briefs.

fit into these FEPRA exemptions. Therefore, this branch of their preemption argument fails.

The second method by which a state provision may conflict with a federal law is if it is impossible to comply with both statutes. See, generally, *Florida Lime*, 373 U.S. at 142–143, 83 S.Ct. at 1217–1218, 10 L.Ed.2d at 257–258. FEPRA states that no funds shall be given to educational institutions that improperly release information. Section 1232g(a)(1)(A), Title 20, U.S.Code. The statute does not contain a prohibition against releasing the student information; it merely denies funds to schools that do so in a manner described in the statute. Therefore, even if EMIS did require schools to release information in violation of FEPRA—which appellants have not proven—it is still possible to comply with both. The EMIS information would be released, and FEPRA would cut off federal funds. FEPRA, however, would not prevent the release of the EMIS information.

Because EMIS neither frustrates the purpose of FEPRA nor makes it impossible to comply with the federal legislation, the two statutes do not conflict. Accordingly, FEPRA does not preempt EMIS, and the second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., and KLUSMEIER, J., concur.

M.B. BETTMAN, J., concurs separately.

MARIANNA BROWN BETTMAN, Judge, concurring.

I fully agree with my colleagues in the majority that the first assignment of error is not well taken, but, in my view, there is no need to articulate an alternative ground to justify the trial court's decision. I agree with the trial court that the resolution of this case is compelled by legislative intent. I believe that what are denominated as "guidelines" in R.C. 3301.0714 are actually rules, that the legislature intended to exempt them from the APA, and that it is constitutionally permissible for the legislature to do this.

As an initial matter, guidelines are the functional equivalent of rules if they have a general, uniform operation and have the force and effect of law. *Doyle*, 51 Ohio St.3d at 47, 554 N.E.2d at 99; see, also, *McLean Trucking*, 70 Ohio St.2d at 113, 24 O.O.3d at 191–192, 435 N.E.2d at 419; *Ohio Nurses*, 44 Ohio St.3d at 76, 540 N.E.2d at 1355–1356. A review of the guidelines here in question compels the conclusion to me that they are an administrative means for the accomplishment of a legislative end—the exact definition of an administrative agency rule in

*Carroll v. Dept. of Adm. Servs.* (1983), 10 Ohio App.3d 108, 110, 10 OBR 132, 133–134, 460 N.E.2d 704, 706, cited with approval in *Doyle,* 51 Ohio St.3d at 47, 554 N.E.2d at 99. Nevertheless, to me the more important issue is what the legislature intended, not whether these are guidelines or rules. As noted in *Henry v. Cent. Natl. Bank* (1968), 16 Ohio St.2d 16, 45 O.O.2d 262, 242 N.E.2d 342, paragraph two of the syllabus:

"The primary purpose of the judiciary in the interpretation or construction of statutes is to give effect to the intention of the General Assembly, as gathered from the provisions enacted, by the application of well-settled rules of interpretation, the ultimate function being to ascertain the legislative will."

In an earlier version of EMIS, the legislature denominated these same guidelines as rules. 143 Ohio Laws 735–736. In a lawsuit involving these same parties, the trial court found the rules to be void because they were promulgated out of the APA rulemaking process.[1] To correct the problems found in the previous lawsuit, the legislature passed the present version of the statute, which was signed by the Governor on April 30, 1992.

In the second version of EMIS, the legislature clearly expressed its intent to exempt the guidelines from the rulemaking process. First, in Am.Sub.H.B. No. 437, Section 5, 144 Ohio Laws, Part IV, 5514–5515, the General Assembly stated that it intended for the state Department of Education to adopt the "guidelines pursuant to rules without the necessity of subjecting the guidelines to the rulemaking procedures" of the APA. Next, the legislature changed the statutory definition of "rule" to read: " 'Rule' does not include * * * guideline adopted pursuant to 3301.0714 of the Revised Code." R.C. 119.01(C). Third, the legislature provided that once the guidelines were passed, they were exempt from legislative oversight under R.C. 111.15.[2] R.C. 111.15(A)(1). Last, the legislature stated that the rules and guidelines created under the initial version of EMIS were "hereby ratified by the General Assembly." Am.Sub.H.B. No. 437, Section 5, 144 Ohio Laws 5514–5515.

---

1. *Princeton v. State Bd. of Edn.* (Jan. 9, 1992), Hamilton C.P. No. A–9106568, unreported. Other parts of the earlier statute that are irrelevant to this dispute were also invalidated.

2. The legislature has also created a process by which the legislature can invalidate rules passed by an agency. After the agency passes a rule, it files a draft with the Secretary of State and Joint Committee on Agency Rule Review. R.C. 111.15(B)(1)(a), (b). After reviewing the draft, the legislature may invalidate the rule if it: (1) exceeds the scope of the enabling statute; (2) conflicts with previously enacted rules; (3) conflicts with the legislative intent; (4) does not provide a complete summary and analysis. R.C. 119.03(I). See, generally, Comment, The Continued Viability of Ohio's Procedure for Legislative Review of Agency Rules in the Post–*Chadha* Era (1989), 49 Ohio St.L.Rev. 251.

The legislature has provided a wealth of information to show that it intended to exempt the EMIS guidelines from the APA rulemaking process; therefore, the question is whether the General Assembly has the power to do so constitutionally. The APA, which itself is an invention of the legislature, was created in 1943. See, generally, 119 Ohio Laws 388; 120 Journal of the Senate of the Ninety–Fifth General Assembly of the State of Ohio (1943) 1119; *Karrick v. Bd. of Edn.* (1963), 174 Ohio St. 467, 469, 23 O.O.2d 114, 115, 190 N.E.2d 256, 257. Before the legislature created the APA, however, it had already granted rulemaking power to numerous agencies. In the pre-APA period, the Ohio Supreme Court found this rulemaking delegation to be constitutionally permissible when the legislature had supplied a sufficient policy framework in the statute. See, *e.g.*, *Matz*, 132 Ohio St. at 276, 8 O.O. at 43–44, 7 N.E.2d at 225; *Coady* at paragraph one of the syllabus; *Thompson*, 134 Ohio St. at 127, 11 O.O. at 552, 16 N.E.2d at 211; *Zangerle*, 139 Ohio St. at 573, 23 O.O. at 55–57, 41 N.E.2d at 373–374.

Not only did the legislature properly grant rulemaking authority before it created the APA, but since that time, it has exempted whole agencies from the requirements of R.C. Chapter 119. In these post-APA exemptions, the Ohio Supreme Court also found the agency's rules to be valid when the legislature had granted rulemaking authority in the agency's enabling statute, but exempted the agency from the APA. For example, municipal civil service commissions are granted rulemaking authority in R.C. 124.40 and are exempted from the APA in R.C. 119.01(A). *Karrick*, 174 Ohio St. at 469, 23 O.O.2d at 115, 190 N.E.2d at 258 (construing R.C. 143.30, the former version of R.C. 124.40). The Ohio Supreme Court held that the rules, even though created out of the APA, were binding and lawful. *Id.* Similarly, in R.C. 3745.03, the legislature granted the Environmental Board of Review ("EBR") rulemaking power. In the enabling statute, the legislature exempted EBR from the APA, stating:

"The authority and the duty of the board to adopt regulations under this section shall not be governed by or be subject to Chapter 119. of the Revised Code."

Therefore, "the Board's rulemaking authority is not subject to R.C. Chapter 119." 1979 Ohio Atty.Gen.Ops. No. 79–088.[3]

Finally, the legislature expressly has stated that:

"*Unless otherwise specifically provided by law,* the failure of any agency to comply with the [APA] procedure shall invalidate any rule or amendment adopted * * *." (Emphasis added.) R.C. 119.02.

---

**3.** Once it has created a rule, the EBR, unlike the state board in EMIS, is required to comply with R.C. 111.15, the legislative-review process. 1979 Ohio Atty.Gen.Ops. No. 79–088.

When it established EMIS, the legislature, consistent with this provision, "otherwise specifically provided by law" that the guidelines are exempt from the APA procedures. See, generally, R.C. 119.01(C) and 111.15(A)(1).

Just as in these other post-APA examples, when the legislature created EMIS in R.C. 3301.0714, it granted the state board rulemaking authority. In R.C. 119.01(C), however, the legislature exempted EMIS guidelines from the APA rulemaking process. Appellants have cited no authority holding that the legislature cannot do so. Therefore, even though these guidelines are the functional equivalent of rules, the legislature has not unconstitutionally delegated its legislative authority.

For these reasons, I concur with the majority's conclusion that the first assignment of error is not well taken.