Kerwin L. Spencer Unified School District No. 353 600 N. Washington Wellington, Kansas 67152
Dear Mr. Spencer:
As legal counsel for Unified School District No. 353, you request our opinion regarding whether notification of the Division of Vehicles of the Kansas Department of Revenue by the chief administrative officer of a unified school district as required under K.S.A. 1999 Supp. 72-89c02
conflicts with the Family Educational Rights and Privacy Act.
The Legislature has established the reasons for which a pupil may be suspended or expelled from public school and the procedure to be followed in suspending or expelling a pupil.[1] In addition, the Legislature requires "each board of education . . . to adopt a written policy requiring the expulsion from school for a period of not less than one year any pupil determined to be in possession of a weapon at school, on school property, or at a school supervised activity."[2]
"(a) Whenever a pupil who has attained the age of 13 years has been expelled from school or suspended for an extended term in accordance with the statutory provisions contained in articles 89 or 89a of chapter 72 of Kansas Statutes Annotated, and such expulsion or extended-term suspension was imposed upon the pupil for:
 "(1) Possession of a weapon at school, upon school property, or at a school-supervised activity; or
 "(2) possession, use, sale, or distribution of an illegal drug or a controlled substance at school, upon school property, or at a school-supervised activity; or
 "(3) behavior at school, upon school property, or at a school-supervised activity, which resulted in, or was substantially likely to have resulted in, serious bodily injury to others, the chief administrative officer of the school from which the pupil was expelled or suspended shall give written notice to the division of vehicles of the department of revenue of the expulsion or suspension of the pupil. . . ."[3]
The written notice of expulsion or suspension is to include the pupil's name, address, date of birth, driver's license number (if available), and the reason for expulsion or suspension.[4] Upon receipt of the written notice from the chief administrative officer of a school district, the Division of Vehicles is required to "suspend the pupil's driver's license or privilege to operate a motor vehicle on the streets and highways of this state."[5]
The Family Educational Rights and Privacy Act (FERPA)[6] safeguards the privacy of pupils' records and establishes the conditions under which the records may be released without impairing the ability of an educational agency or institution to receive federal funding. FERPA provides in part:
 "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a) of this section) of students without the written consent of their parents to any individual, agency, or organization. . . ."[7]
Directory information that may be disclosed without violating FERPA includes the student's name, address, telephone listing, date and place of birth, participation in officially recognized activities and sports, and dates of attendance.[8]
The provision then sets forth a number of entities to whom the education records may be disclosed without jeopardizing the ability of an educational agency or institution to receive federal funds, including teachers within the educational institution or local educational agency who have been determined by such agency or institution to have legitimate educational interests,[9] officials of other schools or school systems in which the student seeks or intends to enroll,[10] and state and local officials or authorities to whom such information is specifically allowed to be reported or disclosed pursuant to state statute adopted after November 19, 1974, if the allowed reporting or disclosure concerns the juvenile justice system and such system's ability to effectively serve, prior to adjudication, the student whose records are released.[11]
FERPA allows the release of personally identifiable information in education records if there is written consent from the student's parents to release the information[12] or the information is furnished in compliance with judicial order or pursuant to a lawfully issued subpoena, upon condition that the parents and student are notified in advance by the educational institution regarding the existence of such orders or subpoenas.[13]
The power of Congress to preempt State law is derived from the Supremacy Clause of Article VI of the United States Constitution.[14]
"A fundamental principle of the Constitution is that Congress has the power to preempt state law. Art. VI, cl. 2; Gibbons v. Ogden, 9 Wheat. 1, 211 (1824); Savage v. Jones, 225 U.S. 501, 533 (1912); California v. ARCAmerica Corp., 490 U.S. 93, 101 (1989). Even without an express provision for preemption, [the Court] ha[s] found that state law must yield to a congressional Act in at least two circumstances. When Congress intends federal law to `occupy the field,' state law in that area is preempted.Id., at 100; cf. United States v. Locke, 529 U.S. ___, ___ (2000) (slip op., at 23) (citing Charleston Western Carolina R. Co. v. VarnvilleFurniture Co., 237 U.S. 597, 604 (1915)). And even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute. Hines v. Davidowitz, 312 U.S. 52, 66 — 67 (1941); ARC America Corp., supra, at 100 — 101; Locke, supra, at _____ (slip op., at 17). [The Court] will find preemption where it is impossible for a private party to comply with both state and federal law, see, e.g., Florida Lime Avocado Growers, Inc. v. Paul,373 U.S. 132, 142 — 143 (1963), and where `under the circumstances of (a) particular case, (the challenged state law) stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' Hines, supra, at 67. What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects. . . ."[15]
There is no express provision included in FERPA stating that the Act preempts any state legislation in the area. Therefore, it must be determined whether Congress intended to "occupy the field," resulting in field preemption,[16] or whether the State Act conflicts with FERPA in such a way that it is impossible to comply with both Acts, or the State Act stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting FERPA, thereby constituting conflict preemption.[17] There is a reluctance to infer preemption, and there is an assumption that Congress did not intend to displace state law.[18]
Field preemption may occur despite the lack of express preemptive language.
"Congress' intent to supersede state law altogether may be inferred because '(t)he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because `the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because `the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose.'"[19]
FERPA was originally offered as an amendment to the Education Amendments of 1974 from the U.S. Senate floor and, therefore, lacked the traditional legislative history materials which would have assisted in determining the various responsibilities under the Act.[20] In December, 1974, "amendments . . . designed to remedy certain omissions in the provisions of existing law and to clarify other portions of the Act" were proposed.[21] In explaining liberalization of restrictions on the transfer, without parent or student consent, of personally identifiable information in student records, the sponsors of the Buckley/Pell Amendment[22] stated:
 "[T]hese amendments permit the transmittal of personal information to State and local officials or authorities as required by State statute. It was not intended, in establishing a minimum Federal standard for record confidentiality and access, to preempt the States' authority in the field. Therefore, if a State law requires an educational official to transmit a specific piece of information about a student to State or local officials, or liberalizes a student's access to his own education records even farther than [FERPA], such as in Maine, Idaho, and New Mexico, where the law permits students of any age to see their records, State law may be followed without securing a parent's specific consent."[23]
In determining the proper construction to be given an act of Congress, the Court may properly consider the legislative history of the enactment, including comments of the sponsors of the bill included in committee reports.[24] Based on the legislative history of FERPA, it becomes clear that the Act was not intended to preempt all state regulation of access to student records. Therefore, Congress has not preempted the field.
It must then be determined whether FERPA and the State Act conflict to such a degree that FERPA preempts the State Act. It appears there have been three cases that have considered whether FERPA conflicts with state laws resulting in preemption of the state laws. The only opinion issued by a federal court determined that the person asserting the protection of FERPA did not, as a teacher in a school district, fall within the definition of "student" under the Act. Therefore, a provision of the Texas Open Records Act requiring release of the teacher's college transcript contained in the teacher's personnel file did not conflict with FERPA and there was no preemption of the state law.[25]
Two opinions issued by California state appellate courts refer to a decision of a California trial court in which a state statute was found to conflict with FERPA. The trial court issued a preliminary injunction to prevent disclosure to the Immigration and Naturalization Service (INS) of the identity and immigration status of students as required by the state educational code. Subsequently, the code provision was repealed and the case dismissed. The issue in both appellate court opinions regarded the awarding of attorneys' fees rather than the preemption of the state law.[26] In a footnote, the appellate court indicated the trial court had based its decision on its determination that the INS was not a state or local official or other authority to which student records could be disclosed.[27] There appears, however, to be no written opinion from the California trial court, and the appellate court opinions provide virtually no assistance in determining preemption of state law.
In Princeton City Sch. Dist. v. State Board,[28] an Ohio court reviewed whether a state act creating a statewide computer information network for public schools was preempted by FERPA. The school district asserted that the state act frustrated the purpose of FERPA and that it was impossible to comply with both the state and federal acts. The court determined that the state and federal acts were consistent in prohibiting the release of personally identifiable information to persons other than certain education officials or organizations.[29] In determining it was not impossible to comply with both acts, the court stated:
 "FERPA states that no funds shall be given to educational institutions that improperly release information. Section 1232g(a)(1)(A), Title 20, U.S. Code. The statute does not contain a prohibition against releasing the student information; it merely denies funds to schools that do so in a manner described in the statute. Therefore, even if [the state act] did require schools to release information in violation of FERPA-which appellants have not proven-it is still possible to comply with both. The [state act] information would be released, and FERPA would cut off federal funds. FERPA, however, would not prevent the release of the [state act] information."[30]
This analysis is echoed in the regulations adopted by the U.S. Department of Education. "A parent or eligible student may file a written complaint with the [Family Policy Compliance] Office [of the U.S. Department of Education] regarding an alleged violation under [FERPA]. . . ."[31] The Office then investigates the complaint and provides written notice of its findings.[32] If it is determined by the Office that an educational agency or institution is not in compliance with the Act, the Office is required to include in its written notice information regarding the steps the educational agency or institution must take to bring itself into compliance and establish a reasonable time in which the educational agency or institution must complete such steps.[33]
"(a) If the educational agency or institution does not comply during the period of time set under § 99.66(c), the Secretary may, in accordance with part E of the General Education Provisions Act —
"(1) Withhold further payments under any applicable program;
 "(2) Issue a compliant to compel compliance through a cease-and-desist order; or
 "(3) Terminate eligibility to receive funding under any applicable program.
"(b) If, after an investigation under § 99.66, the Secretary finds that an educational agency or institution has complied voluntarily with the Act or this part, the Secretary provides the complainant and the agency or institution written notice of the decision and the basis for the decision."[34]
FERPA was enacted under authority conferred upon Congress by the Spending Clause.[35] In exercising its spending power, "Congress may fix the terms on which it shall disburse federal monies to the States,"[36]
even though such conditions may influence a state's legislative choices.[37] "When Congress acts pursuant to its spending power, it generates legislation `much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.'"[38] The release by an educational agency or institution "of a student's records or personally identifiable information to unauthorized persons will result in the withholding of federal funds."[39] FERPA does not preclude a state from enacting laws which require the release of student records or personally identifiable information to entities other than those listed in FERPA. Therefore, K.S.A. 1999 Supp. 72-89c02 does not conflict with FERPA and there is no preemption of the state law.
While K.S.A. 1999 Supp. 72-89c02 is not preempted by FERPA, there is the possibility that compliance with the state statute may jeopardize the ability of a unified school district to receive federal funds. The state statute requires disclosure of "the pupil's name, address, date of birth, driver's license number, if available, and the reason or reasons for the expulsion or suspension" to the Division of Vehicles of the Department of Revenue.[40] Student disciplinary records are "education records" under 20 U.S.C.A. § 1232g(a)(4)(A)[41] and, as such, are protected from disclosure under FERPA, unless disclosure is otherwise permitted by a [federal] statutory exception."[42] There appears to be no such exception.[43]
FERPA precludes the payment of federal funds "to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information). . . ."[44] The federal Act is not violated through an isolated, individual disclosure of a pupil's records or personally identifiable information contained therein.[45]
Every board of education is required to "adopt a policy in accordancewith applicable federal laws and regulations to protect the right of privacy of any student, or pupil and his or her family regarding personally identifiable records, files and data directly related to such student or pupil."[46]
"Such procedures [established through the board's policy] shall provide for . . . restricting the accessibility and availability of any personally identifiable records or files of any student or pupil andpreventing disclosure thereof unless made upon written consent of such student or parent of such pupil, as the case may be. To the extent thatany other provision of law conflicts with this section, this sectionshall control."[47]
The statute was enacted approximately a year and a half after the effective date of the original enactment of FERPA.[48] Therefore, presumably, school districts in Kansas have policies regarding disclosure of pupils' records and personally identifiable information contained therein which are in conformance with FERPA. Disclosures of information as required under K.S.A. 1999 Supp. 72-89c02 would in most instances constitute an isolated disclosure made pursuant to a statutory requirement rather than a school board policy or practice. Thus, there would be no violation of FERPA. However, if a school district makes continuous disclosures of the information designated in K.S.A. 1999 Supp. 72-89c02, the disclosures could be deemed a practice of the school district, thus jeopardizing the availability of federal funds. If it is determined that repeated compliance with the requirement of K.S.A. 1999 Supp. 72-89c02 to disclose to the Division of Vehicles of the Department of Revenue personally identifiable information pertaining to a pupil establishes a school board policy or practice that conflicts with FERPA, there is the possibility that compliance with the state statute may jeopardize the ability of a unified school district to receive federal funds, and the Family Policy Compliance Office of the U.S. Department of Education should be notified.[49] The Office may then conduct an investigation and determine whether the school district has complied with FERPA, providing the school district with a list of specific steps it must take to comply and a time table during which the school district may voluntarily take such steps.[50]
In summary, K.S.A. 1999 Supp. 72-89c02 is not preempted by FERPA. Further, the federal Act is not violated through an isolated, individual disclosure of a pupil's records or personally identifiable information contained therein. FERPA precludes the payment of federal funds to any educational agency or institution which has a policy or practice of permitting the release of education records, or personally identifiable information contained therein, other than directory information. If it is determined that repeated compliance with the requirement of K.S.A. 1999 Supp. 72-89c02 to disclose to the Division of Vehicles of the Department of Revenue personally identifiable information pertaining to a pupil establishes a school board policy or practice that conflicts with FERPA, there is the possibility that compliance with the State statute may jeopardize the ability of a unified school district to receive federal funds and the Family Policy Compliance Office of the U.S. Department of Education should be notified by the unified school district. The Office may then conduct an investigation and, if it is determined that a policy or practice in violation of FERPA has been established, provide the school district with specific steps the school district should take to bring itself into compliance.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:
[1] K.S.A. 1999 Supp. 72-8901 et seq.
[2] K.S.A. 1999 Supp. 72-89a02.
[3] K.S.A. 1999 Supp. 72-89c02 (emphasis added).
[4] Id.
[5] Id.
[6] 20 U.S.C.A. § 1232g.
[7] 20 U.S.C.A. § 1232g(b)(1).
[8] 20 U.S.C.A. 1232g(a)(5)(A); 34 C.F.R. § 99.3.
[9] 20 U.S.C.A. § 1232g(b)(1)(A); 34 C.F.R. § 99.31(a)(1).
[10] 20 U.S.C.A. § 1232g(b)(1)(B); 34 C.F.R. § 99.31(a)(2).
[11] 20 U.S.C.A. § 1232g(b)(1)(E); 34 C.F.R. § 99.31(a)(5)(i)(B).
[12] 20 U.S.C.A. § 1232g(b)(2)(A). See 34 C.F.R. § 99.30.
[13] 20 U.S.C.A. § 1232g(b)(2)(B). See 34 C.F.R. § 99.31(a)(9)(i).
[14] Crosby v. National Foreign Trade Council, No. 99-474 (U.S. Sup.Ct. June 19, 2000); McShares, Inc. v. Barry, 266 Kan. 479, 487
(1998).
[15] Crosby, supra. See also McShares, 266 Kan. at 487-88, quotingLouisiana Public Service Comm'n v. FCC, 476 U.S. 355, 368-69,106 S.Ct. 1890, 90 L.Ed.2d 369 (1986).
[16] United States v. Locke, Nos. 98-1701, 98-1706 (U.S. S.Ct. March 6, 2000).
[17] Id.
[18] Hartford Accident Indemnity Co. v. Red Ball Transit Co.,Inc., 262 Kan. 570, 575 (1997), citing Building Constr. TradeCouncil v. Associated Builders Contractors of Mass./R.I., Inc.,507 U.S. 218, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993).
[19] Fidelity Fed. S. L. Assn. v. de la Cuesta, 458 U.S. 141,153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), quoting Rice v. SantaFe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447
(1947).
[20] 120 Cong. Rec. 39862 (December 13, 1974) ("Joint Statement in Explanation of Buckley/Pell Amendment").
[21] Id.
[22] See P.L. 93-568.
[23] 120 Cong. Rec. 39863 (December 13, 1974) ("Joint Statement in Explanation of Buckley/Pell Amendment") (emphasis added).
[24] See Nat'l Woodwork Manufacturers Assn. v. N.L.R.B., 386 U.S. 612,639-40, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967).
[25] Klein Independent School Dist. v. Mattox, 830 F.2d 576, 579
(5th Cir. 1987).
[26] Maria P. v. Riles, 743 P.2d 932 (Cal. 1987), earlier reported opinion, 214 Cal.Rptr. 20 (Cal.App. 2 Dist. 1985).
[27] 214 Cal.Rptr. at 22, fn. 3.
[28] 645 N.E.2d 773 (Ohio App. 1 Dist. 1994).
[29] Princeton City Sch. Dist., 645 N.E.2d at 778.
[30] Id.
[31] 34 C.F.R. § 99.63. See 34 C.F.R. § 99.60.
[32] 34 C.F.R. § 99.66(a) and (b).
[33] 34 C.F.R. § 99.66(c).
[34] 34 C.F.R. § 99.67 (emphasis added).
[35] See U.S. Const., Art. I, § 8.
[36] Pennhurst State Sch. Hospital v. Halderman, 451 U.S. 1, 17,101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). See also South Dakota v. Dole,483 U.S. 203, 206, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987); New York v.U.S., 505 U.S. 144, 167, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).
[37] New York v. U.S., 505 U.S. at 167.
[38] Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 640,119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), quoting Pennhurst State Sch. Hospital, 451 U.S. at 17. See also U.S. v. Miami University,91 F. Supp.2d 1132, 1142 (S.D.Ohio 2000).
[39] Webster Groves School Dist. v. Pulitzer Pub. Co., 898 F.2d 1371,1375 (8th Cir. 1990).
[40] K.S.A. 1999 Supp. 72-89c02.
[41] Miami University, 91 F. Supp.2d at 1160.
[42] Id. at 1152.
[43] Id. at 1154, 1158.
[44] 20 U.S.C.A. § 1232g(b)(1) (emphasis added).
[45] Achman v. Chisago Lakes Ind. Sch. Dist., 45 F. Supp.2d 664, 674
(D.Minn. 1999) (a solitary violation is insufficient to support a finding that the school district has violated FERPA as a matter of policy or practice); Jensen, ex rel. v. C.J. Reeves, 45 F. Supp.2d 1265, 1276
(D.Utah 1999) (FERPA was adopted to address systematic, not individual, violations of students' privacy by unauthorized releases of sensitive information in their educational records); Maynard v. Greater Hoyt Sch.Dist., 876 F. Supp. 1104, 1108, fn. 1 (D.S.D. 1995) (there is no showing in the record that this disclosure was anything other than an isolated incident, not a policy or practice of the school board). Seealso Gundlach v. Reinstein, 924 F. Supp. 684, 690, fn. 7 (E.D. Penn. 1996), aff'd, 114 F.3d 1172 (3rd Cir. 1997) (plantiff has failed to allege the school maintains a policy of denying students access to records, but instead bases his claim on one instance of alleged noncompliance).
[46] K.S.A. 72-6214(b) (emphasis added).
[47] Id. (emphasis added).
[48] See L. 1976, Ch. 228, § 4; General Education Provisions Act, Pub.L. 93-380, § 513(b)(1).
[49] 34 C.F.R. § 99.61; see 34 C.F.R. § 99.60.
[50] 34 C.F.R. § 99.66.